## LOUIS BENAVIDES v. THE STATE.

The admissibility of dying declarations is too firmly established to be called
    in question. At common law, when a person who expects to die from
    wounds inflicted, and is in constant expectation of dissolution, his declara-
    tions as to the circumstances of his injuries have been constantly received
    as competent evidence.

The 660th article of the Code of Criminal Procedure, in relation to dying
    declarations, states no new rule. (Paschal's Dig., Art. 3125, Note 759.) It
    is only necessary to establish the four requisites of the statute: Approach-
    ing death; voluntary statement without persuasion, not in answer to
    interrogatories; and sound mind.

Where the accused attempted to escape immediately after the offense was per-
    petrated, it is a circumstance against him.

Evidence offered by accused, which is so improbable as to raise a presumption
    of fabrication, is a circumstance in favor of guilt.

Where the evidence established murder in the first degree, it is not error, of

which the accused can complain, that the court charged the jury that they might find the defendant guilty of murder in the second degree or of manslaughter.

APPEAL from Cameron.   The case was tried before Hon. ELISHA BASSE, one of the district judges.

Louis Benavides and Rafael Benavides were indicted, for that they murdered Julio Ruiz, on the 29th March, 1868.   Louis Benavides was alone put upon his trial, upon the plea of not guilty.

Julio Ruiz lived with his sister, who was connected by marriage (sister-in-law) with the accused.   They were all living in peace and harmony.   Julio started out on Sunday morning to cross the Rio Grande river to catch fish for the Matamoros market.   At no great distance from his sister's ranche he was found with bullet and bowie-knife wounds through his breast, and a bowie-knife wound in his bowels.   He stated to the witnesses that the brothers Benavides had given him these wounds, Rafael using the gun and Louis the knife.   He could give no reason for the assault, seemed to be conscious that he was dying, and called upon those about him to pray with him, repeating the dying confessions of his church.

The statements all agreed that the deceased was in his right mind when making these accusations.   His friends swore that the deceased was a working, honest man, who got his living by labor.   There was no other proof as to who killed the deceased, except that the accused, who lived near by, immediately fled.

For the defense it was proved, that the deceased was a violent man when drinking, and that he had shot one man when under intoxication.

The defendant moved to exclude the dying declarations of the deceased, and excepted to the refusal to exclude them.   He also excepted to the charge of the court.   But the charge followed the statute as to the three degrees of felonious homicide.   The jury found the prisoner guilty

of murder in the second degree, and assessed the punishment at twenty years imprisonment in the penitentiary. The motion for a new trial was overruled. But so far as the precedent is valuable as to facts they are, that if the deceased was worthy of credit, and his dying declarations worthy of credit, the Benavides attacked and murdered him without provocation; nevertheless a conviction for murder in the second degree was sustained.

*Israel B. Bigelow,* for appellant.—I. The court erred in refusing to exclude from the consideration of the jury all of the testimony introduced by the state (under objection of the defendant) respecting the dying declaration of Ruiz when so moved to do by the defendant.

II. The court erred in charging the jury upon the law of murder in the second degree and of manslaughter, and in directing that under the indictment in this case they might, according to the testimony, if they were satisfied that an offense had been committed, find the defendant guilty of murder in the second degree or of manslaughter, as the evidence might justify, when in fact there was no testimony to call for or justify said charges.

III. The court erred in refusing to grant the defendant a new trial.

The court will observe that the appellant was convicted solely upon the dying declarations of Julio Ruiz, and that all of the evidence respecting his declarations was objected to by the appellant.

In the language of Mr. Greenleaf, "whatever the statement may be, it must be complete in itself; for if the declarations appear to have been intended by the dying man to be connected with and qualified by other statements, which he is prevented by any cause from making, they will not be received." (1 Greenl. on Ev., § 159.)

The record shows that Ruiz lived three hours after he was found wounded, and was sensible to the last and capa-

ble of conversing, and all of the witnesses who saw him
agree in saying, that he did not during the whole time
state a single circumstance connected with the attack upon
him further than that he was cut by appellant and shot by
Rafael Benavides.

The record in this case shows beyond contradiction two
facts:

1. That Louis Benavides, the appellant, is a quiet, peace-
able, industrious man; and

2. That the utmost harmony existed between him and
Ruiz, and none of the witnesses were able to state a single
reason for Benavides assaulting Ruiz. Isadora Garcia, the
sister of Ruiz and the leader in this prosecution, was
emphatic in her declarations "that her brother, Julio
Ruiz, and appellant had always lived together in beautiful
harmony and friendship—that they lived together like
brothers."

Dying declarations are always admitted with great cau-
tion, and, in the language of Mr. Greenleaf, "where the
declarant, if living, would be incompetent to testify by
reason of infamy or the like, his dying declarations are
inadmissible." (1 Greenl. on Ev., §§ 157, 162.)

[Mr. Bigelow also relied upon Burrell v. The State, 18
Tex., 713; Hunter v. The State, 24 Tex., 454; Johnson v.
The State, 27 Tex., 758.]

IV. "Under this indictment you may, according to the
testimony, if you are satisfied that an offense has been com-
mitted, find the defendant guilty of murder in the first
degree, or of murder in the second degree, or of man-
slaughter, as the evidence may justify. If you find that
the defendant is guilty of murder in the second degree, or
of manslaughter, you will so state in your verdict and
assess the punishment." To which portions of the charge
of the court the defendant by his counsel excepted.

No testimony was introduced or offered by him in miti-
gation of the charge. And, if guilty at all, he was guilty

of one of the most malicious and atrocious murders ever committed, and ought to have been hung instead of being sent to the penitentiary.

V. The only legal question before the jury was, whether the appellant was or was not guilty of murder in the first degree. And had the court stopped after having charged the jury upon the law of murder in the first degree, this question would have been legally presented to the jury and by them decided. But the court, in charging that the jury could find the defendant guilty of murder in the second degree or of manslaughter, opened a way for them to escape from the true question at issue, and licensed them to find a verdict that was unsustained by the testimony and in conflict with the law.

The defendant had a right, under the facts before the jury, to ask, and did ask, to be hung or acquitted; but he was denied this request in consequence of the erroneous instructions of the court, of which, it is respectfully submitted, we have a right to complain.

If it is said that the charge of the court was favorable to the defendant and therefore he ought not to complain, I say that is no answer to the objections herein. Courts do not administer the laws upon principles of policy nor for the convenience of parties whose lives and liberties are in issue, and hence the appellant claims the right to present to this court for its determination the naked question: Did or did not the district judge err in his charge to the jury, and does not the law demand that this cause be remanded?

*Frank E. McManus*, for the state, argued the case upon the record.

CALDWELL, J.—We have carefully reviewed the bills of exceptions and the evidence, and are of opinion that there is no error demanding a reversal of the judgment.

The defendant was convicted of murder in the second degree, and sentenced to twenty years in the penitentiary. The only evidence to establish the guilt of defendant is the dying declarations of deceased and immediate flight and concealment of the prisoner.

The district attorney introduced Isadora Garcia to prove the dying declarations of deceased; to the introduction of which testimony counsel for the prisoner objected, on the ground that "said testimony should be first addressed to the court."

The admissibility of "dying declarations" is now too firmly established to be called in question. At common law, when a person who expects to die from wounds inflicted, and is in constant expectation of dissolution, his declarations in relation to the circumstances of his injuries have been constantly received as competent evidence.

When every hope of this world is gone, when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth, a situation so solemn and awful is considered by the law as creating an obligation equal to that which is imposed by an oath administered in court. (Whart. Com. Law, 247.)

Our statute, (Paschal's Dig., Art. 3125,) in providing for the admission of dying declarations, lays down no new rule. It is simply in affirmance of the common-law rule.

The evidence is conclusive that the deceased at the time of making the declarations was conscious of approaching death, and had no hope of recovery; that the declarations were voluntarily made, and not responsive to interrogatories calculated to mislead; and that he was of sound mind. This is sufficient to admit the declarations.

It does not clearly appear from the bill of exceptions whether the court, by a preliminary examination of the witnesses, ascertained the condition of the deceased before pronouncing his declarations admissible.

Correct practice, however, requires that the court should

have done so; and, in the absence of evidence to the contrary, we must presume that the court discharged its duty in this behalf.

It is in evidence that the defendant and his supposed accomplice fled immediately after inflicting the wounds from which the deceased died. "The guilty flee when no man pursueth" is a divine maxim, which has been incorporated in our system of jurisprudence.

A strong presumption of guilt arises whenever a person accused of an offense attempts to escape or evade justice. It is admissible for the prosecution to show that the prisoner attempted to escape, and, if no proper motive can be ascribed to the attempted flight, the presumption of guilt is greatly strengthened. (Whart. Crim. Law, 269.) In the case at bar, counsel for the prisoner made a feeble effort to account for the prisoner's flight, but the jury were well warranted in discarding the evidence of the witness Weaver as totally unworthy of credit. This witness stated that the prisoner had been lurking about his house for some time previous to his arrest, but it was for the purpose of surrendering himself to the authorities. This witness, Weaver, attended the deceased in his last moments, and must have known that the prisoner was accused of the murder. Why did he not give information of the fact? He does not inform us.

This witness further testified, that when the deceased was *in extremis* he heard him say, in Spanish, " *Yo tengo la culpa, mata me, mata me.*" (It is my fault, kill me, kill me.) These expressions were disconnected with any others. No explanation followed or preceded them. It is evident that they were fabricated to produce the impression that the deceased was inculpating himself. This view is strengthened when it is considered that the witness professed to understand the language of the deceased, but could not render into English "*Ayudarme de morir bien*"—assist me to die well—the simplest words in the Spanish language.

From the fabrication of this swift witness, who was intimate with the prisoner, arises another presumption of guilt, (Whart. Crim. Law,) which we doubt not was considered by the jury in making up their verdict.

There is no error in the charge of the court of which the prisoner can complain. The law defining murder in the first and second degrees is laid down with great liberality to the prisoner. The law of manslaughter was also given to the jury. This is assigned as error by the counsel for the prisoner.

Surely a prisoner has no right to object when the minds of his triers are directed to a milder grade of the offense with which he is charged. There is not a *scintilla* of evidence upon which a charge of manslaughter can be based, and it would be well if some of our district judges would be more guarded in their charges, and lay down the law applicable to the facts in evidence, no more. Abstract law may mislead a jury, but the party benefited thereby is estopped.

The evidence fully sustains the verdict, and the judgment therein is

AFFIRMED.