### Thomas Coggin v. The State. ·

No. 1193. Decided June 9, 1897.

**Violating Rules, etc., of Live Stock Sanitary Commission Establishing .a Quarantine—Recognizance on Appeal—Sufficiency.**

A recognizance on appeal from a conviction under article 824d, Penal Code, for violating the rules, orders, and directions of the Live Stock Sanitary Commission establishing and governing quarantine of live stock in Texas, is fatally defective which fails to set out, in the recitation of the offense, the two essential elements, to wit: 1. The fact that the Live Stock Sanitary Commission had made its orders, rules, regulations, and directions; and 2, that the Governor has issued his proclamation thereupon.

Appeal from the County Court of Fisher. Tried before Hon. S. Patton, County Judge.

Appeal from a conviction for a violation of quarantine established by the Live Stock Sanitary Commission; penalty, a fine of $100.

Omitting formal averments the information charged, "That heretofore, to wit: On or about the 21st day of April, 1896, in the said county of Fisher and State of Texas, one Thomas Coggin did then and there unlawfully violate, disregard, and evade the rules, regulations, orders, and directions of the Live Stock Sanitary Commission of Texas, estab-

lishing and governing live stock quarantine, without being authorized so to do either by any provision of the law contained in chapter 56 of the General Laws of the Twenty-third Legislature of Texas, or by the said Live Stock Sanitary Commission; the said rules, regulations, orders, and directions of the said Live Stock Sanitary Commission and the quarantine line hereinafter described having been heretofore determined by the said commissioners, and having been duly proclaimed by the Governor of the State of Texas, by his proclamation issued after having been duly notified thereof by said Commission. And the said Thomas Coggin did then and there drive and move a herd of domestic animals, to wit, twenty head of cattle, from the area of country south and east of the said quarantine line, into the area of country north and west of said line, and into Fisher County, Texas, the said quarantine line then and there being in conformity with the Federal quarantine line established by the United States Department of Agriculture; and the rules, regulations, orders, and directions of said Live Stock Sanitary Commission, and the said quarantine line being as follows, to wit: "The Live Stock Sanitary Commission of Texas are reliably informed that cattle located in that certain area of Texas which is situated south and east of the quarantine line hereinafter described, and which is the same line heretofore fixed and established by the Honorable United States Secretary of Agriculture as a quarantine line against Southern or splenetic fever within the State of Texas for the year 1896, are liable to communicate a contagious and infectious disease known as Southern or splenetic fever to the cattle located north and west of said line within the State, should said cattle from said infected area come in contact with the said cattle on the north and west of said line; or should said cattle, located on the south and east of said line be driven over or be grazed over the land situated west and north of said line:

"Now, therefore, the Live Stock Sanitary Commission of the State of Texas, by virtue of the law under which they are appointed, and which prescribes their duties, in order to prevent the spreading or communicating said disease, now hereby make, fix, and establish a quarantine line in this State, as follows: Beginning at the southwest corner of the county of Pecos, on the bank of the Rio Grande River; thence following the western boundary of Pecos County to the southeast corner of Reeves County; thence following the boundary line between the counties of Pecos and Reeves to the Pecos River; thence southeasterly following the Pecos River to the northwestern corner of Crockett County; thence easterly along the northern boundary of Crockett and Schleicher counties to the southeastern corner of Irion County; thence northerly along the eastern boundary of Irion County to the northeast corner of said county; thence northerly to the southern boundary of Coke County; thence westerly to the southwest corner of Coke County; thence northerly along the western boundary of Coke County to the southern boundary of Mitchell County; thence easterly to the southeastern corner of Mitchell County; thence northerly along the western boundary of Nolan

County to the northwestern corner of Nolan County; thence easterly along the northern boundary of said county to the southwestern corner of Jones County; thence northerly along the western boundary of Jones County with the northern boundary of Stonewall County; thence eastward along the northern boundaries of Jones and Shackelford counties to the southwest corner of Throckmorton County; thence northerly along the western boundaries of Throckmorton, Baylor, and Wilbarger counties to the Red River; thence continuing along Red River in a southeasterly direction to the southeastern corner of the county of Greer, thence northerly following the course of the North Fork of the Red River to its intersection with the eastern boundary line of Wheeler County; thence north with the eastern boundary line of Wheeler, Hemphill, and Lipscomb counties to the northeast corner of Lipscomb County; thence in a westerly direction with the northern boundary line of Lipscomb, Ochiltree, Hansford, Sherman, and Dallam counties to the northwestern corner of Dallam County to the eastern line of New Mexico, intersecting the present Federal quarantine at said point. And now hereby make the following rule and regulation: That from the 15th day of February, 1896, to the 15th day of November, 1896, no cattle are to be transported by rail, driven or moved in any manner whatever from said area south and east of said line herein last above described, to any portion of the State of Texas, situated north or west of said line. Contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

The recognizance of appellant, in setting out the offense, recited that appellant "stands charged in this court with the offense of unlawfully violating, disregarding, and evading the rules, regulations, orders, and directions of the Live Stock Sanitary Commission of Texas, establishing and governing the live stock quarantine in Texas."

The Assistant Attorney-General moved to dismiss the appeal, because the recognizance failed to sufficiently recite the offense charged in the information, and because it recites no offense against the laws of the State. This is the only question discussed in the opinion below, and no further statement is necessary.

*Leggett & Cunningham*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of driving cattle across the quarantine line established by the Live Stock Sanitary Commission.

The Assistant Attorney-General moves to dismiss this appeal, because the recognizance recites no offense against the laws of the State, and does not recite the offense charged in the information. The recognizance recites that the appellants "stands charged in this court with the offense of unlawfully violating, disregarding, and evading the rules, regulations,

orders, and directions of the Live Stock Sanitary Commission of Texas, establishing and governing the live stock quarantine in Texas," etc. It seems, under the provisions of the law, that, in order to constitute this offense, said sanitary commission must make its rules, orders, regulations, and directions, and, before they can be operative, the governor must be notified of such rules, regulations, orders, and directions, and must issue his proclamation, putting them into operation, or giving notice of the same. It will then be observed that, before there can be a violation of these enactments of the Legislature, the Live Stock Sanitary Commission must make its rules, regulations, orders, and directions, and the Governor must issue his proclamation, after being notified by said commission of the creation of these rules, regulations, orders, and directions; otherwise, there can be no offense, because there are no inhibitions. In order to charge this offense, the indictment or information must show and allege that these matters have occurred. This offense not being one eo nomine, the constituent elements of the offense must be set out in the recognizance in order to make that a valid instrument. The statute requires that the recognizance must describe some offense against the law, and it must be the offense of which the accused is convicted. The recognizance in this case does not undertake to set out two essential elements of this offense, to wit, the fact that the sanitary commission had made its orders, rules, regulations, and directions, and that the Governor has issued his proclamation thereupon; and, because the recognizance is fatally defective in the matter pointed out, the appeal herein is dismissed. See Acts 1893, pp. 70, 73, secs. 3, 13, 15.

*Dismissed.*

[NOTE.—Appellant's motion for rehearing filed June 23, 1897, was overruled without a written opinion.—Reporter.]

