## JOHN MILLER v. THE STATE.

### No. 1790. Decided October 23, 1912.

**1.—Assault—Evidence—Evading Arrest—Declarations of Defendant.**

Where, upon trial of assault, the State's evidence raised the issue that the defendant was avoiding arrest, had left the State to keep from being arrested and had just returned and was then in hiding in his father's house, there was no error in permitting the State's witness who made the arrest to testify to what the mother said just before the arrest and what was said by the person in the room who afterwards appeared to be defendant, with reference to such arrest.

**2.—Same—Charge of Court—Intent to Injure.**

Where, upon trial of assault, the testimony showed that the defendant did assault the said female by acts of violence and indecent familiarity, there was no error in the court's charge, that the intent to injure was presumed and that the burden was cast upon defendant to show that it was an accident, or his innocent intention, and where the defendant was not an adult, that the offense would be simple assault.

**3.—Same—Charge of Court—Weight of Evidence.**

Where the court's charge did not assume the injury, but recited that where an injury was actually caused by violence to the person, the intent to injure is presumed, etc., it was not on the weight of the evidence.

**4.—Same—Charge of Court—Misdemeanor—Bill of Exceptions.**

Where, in a misdemeanor case, no exception was reserved at the time to the court's charge, and no special charges were requested, the matter could not be reviewed on appeal. Following Basquez v. State, 56 Texas Crim. Rep., 329.

**5.—Same—Evidence—Moral Turpitude.**

Where the offense with which the witness was charged was not one involving moral turpitude, testimony with reference thereto was inadmissible; however, where the testimony of the witness itself was not material, there was no reversible error.

Appeal from the County Court of Collin. Tried below before the Hon. H. L. Davis.

Appeal from a conviction of simple assault; penalty, a fine of $25.

The opinion states the case.

*Abernathy & Abernathy,* for appellant.—On question of admitting declarations when the officer made the arrest: Nolen v. State, 9 Texas Crim. App., 419; Jones v. State, 71 S. W. Rep., 962; Goodwin v. State, 58 Texas Crim. Rep., 496, 126 S. W. Rep., 582.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted for making an assault on a girl about seven years of age, he being also a minor, and his punishment assessed at a fine of $25.

J. F. Bradshaw testified he was an officer and he heard of the alleged assault the day after it occurred; that he did not see the defendant for about three weeks or a month thereafter. The testimony shows that defendant did not sleep at home the night after he was alleged to have assaulted the little girl, and he left and went to Oklahoma the next day, and had just returned home when the officer went there to arrest him. Defendant's father lived in a two-room house, and Mr. Bradshaw says he walked up on the gallery talking to the father and mother, when the mother said something in a tolerably loud tone of voice. "When she spoke there was something said by some one in the room. I heard some one say: 'Ma, I will die before I will give up.' The voice seemed to come from the west end of the house, northwest of where I was. I had heard the defendant speak a little before that time. I have heard him speak some since. I think there is something particular about his voice; it seems like he speaks through his nose. He stammers like he can't speak plain or something like that. There was a peculiarity in the voice that I heard in the room. From what I have heard of his voice and speech and conversation since that time, the voice that I heard in that room that afternoon sounded like his. The voice said, 'Ma, I will die before I will give up.' The defendant afterwards came to the door of the room, the door in the south side of the east room of the house where I was standing. He came to the door after I heard the voice in the room; he came from the west part of the east room. I could not tell whether he came out of the west room or not. Just before I heard the voice in the room his mother said to me, 'Don't go in there, don't go in there, you will scare him to death, he is heavily armed and he will die before he will give up.' That was all she said. It was right after I heard the voice in the room that defendant came to the door of the east room; it was not over a minute."

Appellant objected to the witness testifying what the mother said and what was said by the person in the room. As it appears that Mr. Bradshaw was there for the purpose of arresting defendant, and defendant was in close enough proximity to have heard what was

said, and the facts and circumstances rendering it almost conclusive that it was defendant who made the remark inside of the room, there was no error in admitting this testimony. The State's evidence would raise the issue that defendant was avoiding arrest, had left the State to keep from being arrested, and had just returned, and was then in hiding in his father's house. (Holden v. State, 18 Texas Crim. App., 91; 2 Wharton's Ev., sec. 1136.) That one is seeking to evade arrest is always admissible, and it is a circumstance tending to show that one is guilty of the offense with which he knows he is charged. (Benavides v. State, 31 Texas, 579; Sheffield v. State, 43 Texas, 378; Williams v. State, 22 Texas Crim. App., 497; Aiken v. State, 10 Texas Crim. App., 610; Gilleland v. State, 24 Texas Crim. App., 524.)

We have carefully reviewed the objections to the charge of the court contained in the motion for a new trial, and we are of the opinion they present no error. The testimony of the prosecuting witness would show that defendant met her on the way home from school, caught hold of her, pulled her over in the weeds by the side of the road, and pulled up her dress, and when he did this she commenced crying, when he let her go. The intent can be presumed from the fact of actual injury to the person charged to be injured. For example, in case where a woman was pushed down by an adult male. This is not a conclusive presumption. The effect is to cast the burden of proof on defendant to show that it was an accident, or an action innocent within itself. Rutherford v. State, 13 Texas Crim. App., 92; Atkins v. State, 11 Texas Crim. App., 8; Young v. State, 31 Texas Crim. Rep., 24. It is further submitted that indecent familiarity upon the person of a female by an adult male, against her will, is an aggravated assault, and if the man were not an adult it would be simple assault. Pefferling v. State, 40 Texas, 486; Thompson v. State, 43 Texas, 583; Curry v. State, 4 Texas Crim. App., 574; Ridout v. State, 6 Texas Crim. App., 249; Hemanus v. State, 7 Texas Crim. App., 372; Atkins v. State, 11 Texas Crim. App., 8; George v. State, 11 Texas Crim. App., 95; Sanford v. State, 12 Texas Crim. App., 196; Thomas v. State, 16 Texas Crim. App., 535; Shields v. State, 32 Texas Crim. App., 498; Berry v. State, 40 S. W. Rep., 984; Hill v. State, 37 Texas Crim. Rep., 279; Thompson v. State, 89 S. W. Rep., 1081. Paragraph three of the main charge does not assume the injury, but recites that where an injury is actually caused by violence to the person, the intent to injure is presumed. It is not a comment upon the testimony. Stripling v. State, 47 Texas Crim. Rep., 117, 80 S. W. Rep., 376, overruling Floyd v. State, 29 Texas Crim. App., 341; Young v. State, 31 Texas Crim. Rep., 24. In addition to this, there are no bills of exception to the charge of the court, and this being a misdemeanor, objections to the charge called to the attention of the court for the first time in the motion for a new trial come too late. Exceptions

must be reserved at the time the charge is given, a special charge requested, and an exception taken to the refusal of the court to give such charge. Basquez v. State, 56 Texas Crim. Rep., 331, and cases there cited.

The only other ground presented in a way we can review it is the objection to permitting the State, on cross-examination, to ask defendant's witness Renn if he had not been indicted for gambling, and requiring the witness to answer the question. This was error, for gambling is not a felony, and not an offense involving moral turpitude. But while error, is it such an error as should result in a reversal of the case? If the witness was a witness to a material fact, it would necessarily result in a reversal, as it was an improper effort to impair the force of the testimony of the witness by discrediting him. The State called as a witness the father of the girl, who testified that he drove to the house and met his little girl when she got home; that he unhitched his horses and rode back west on the road and got pretty close to a man on the road, but the man left the road and went into a field and went in a northwest direction. He did not undertake to identify defendant as the man. On cross-examination he was asked if he did not tell Jim Renn two or three days after the alleged occurrence that he rode west after the occurrence but did not see any one. He denied making this statement to Renn. Renn was called as a witness, and testified that two or three days after he heard of the occurrence, he met Heubsch (the girl's father) and that Heubsch told him that he rode west on the road but did not see any one. On cross-examination of this witness the State was permitted to ask him if he had not been indicted for gambling, and he was required to answer the question, and stated he had. It is thus seen that the witness was introduced to impeach the statement of the girl's father that he had seen a man on the road while riding west. If Mr. Heubsch had sought to identify defendant as the man he saw, this might be material, but he testified he knew defendant; that he rode up pretty close to the man he claimed to have seen and did not recognize the man, and testified to no fact which would aid the jury in determining whether or not the man he saw was defendant; in fact his testimony would have the contrary tendency, as he testified he knew defendant, and he could not say that he was the man. Defendant himself testifies that he went into the lane north of Mr. Heubsch's home and went from there on the road towards Anna. It is true he claims he did not meet the prosecuting witness. Sam Hilliburton testifies he saw defendant on this road going west and defendant told him he was going to Anna. Other witnesses testify to defendant being on this road going west, and these witnesses were not sought to be impeached. Appellant admitting he was on this road, certainly the testimony of the witness Renn was not of that material character

which, admitting testimony to discredit, should or ought to result in a reversal of the case. Pettis v. State, 47 Texas Crim. Rep., 66; Henderson v. State, 49 Texas Crim. Rep., 269; Tinsley v. State, 52 Texas Crim. Rep., 91.

The judgment is affirmed.

*Affirmed.*