WILLIAM D. WELBURN, JR., v. THE STATE.

No. 17620. Delivered June 28, 1935.
Rehearing Denied November 6, 1935.

The opinion states the case.

*Dave Watson, E. B. Simmons,* and *Schlesinger & Schlesinger,* all of San Antonio, for appellant.

*John R. Shook,* Crim. Dist. Atty., *Leroy Jeffers,* Asst. Crim. Dist. Atty., and *B. F. Ladon,* all of San Antonio, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is perjury; the punishment, confinement in the penitentiary for seven years.

In a suit for divorce instituted by Mrs. Wineta Long Welburn against appellant, he testified under oath that he had not gone to the city of Boerne on the 25th of July, 1933, and there married Wineta Long. It was upon such testimony that the indictment herein charging perjury was predicated.

Mrs. Wineta Long Welburn testified on the present trial in substance as follows: She had for some time attended the Government Hill Methodist Church in San Antonio, of which appellant was pastor. Her association with appellant led to sexual relations, the first act of intercourse having taken place in the parsonage. In March, 1933, she discovered that she was pregnant and advised appellant of such fact. Thereafter she and appellant went to the office of Dr. R. Wright in New Braunfels, where appellant urged the physician to perform an

illegal operation, which he refused to do. Later they went to Dr. A. Montemayor in San Antonio where appellant made the same request to no avail. On the 22nd of July, 1933, she, with appellant, her mother and sister, journeyed to Boerne where she and appellant executed a notice of intention to marry. On the 25th day of July, 1933, Judge Maurice J. Lehmann, County Judge, performed the marriage ceremony in the town of Boerne. Mrs. Welburn's mother and sister gave testimony to the effect that the marriage occurred. Dr. Wright and Dr. Montemayor testified that appellant came to them with Mrs. Welburn in an effort to have an illegal operation performed. Their examination disclosed that Mrs. Welburn was pregnant. Judge Lehmann testified to having performed the marriage ceremony. However, he said that he would not swear positively that appellant was one of the parties, but that in his best judgment he was. Mrs. Irene Leidl, who was present when the ceremony was performed, also testified that in her best judgment appellant was one of the parties. The jury had before them the notice of intention to marry, with appellant's name thereon, and also the acknowledged signature of appellant as it appeared on other instruments.

Testifying in his own behalf, appellant denied that he had gone to Boerne and married Mrs. Welburn, and denied that he had ever had sexual relations with her. He admitted, however, that he had kept her company at times. He testified that he was in San Antonio at the time it was claimed the marriage ceremony had been performed in Boerne. He brought forward many witnesses whose testimony supported his theory of alibi. As to the notice of intention to marry, appellant testified that the signature thereon was not his. In this he was corroborated by the testimony of his father. It was the opinion of an expert, who testified for appellant, that the signature on the notice of intention was not appellant's.

As shown in bill of exception No. 5, the district attorney, on direct-examination, asked a witness for the State if he had any interest in the case. A negative answer was given. The bill fails to show whether the testimony given by the witness in behalf of the State was material. If he gave any testimony, it is not set out in said bill of exception. This court has uniformerly held that a bill of exception complaining of the improper impeachment of a witness is incomplete if it fails to show that the impeached witness gave material testimony in behalf of the defendant on trial. Ewing v. State, 49, S. W.

(2d) 450; Widener v. State, 5 S. W. (2d) 138; Miller v. State, 150 S. W., 635; Holmes v. State, 150 S. W., 926. We think it follows that a bill complaining of the improper sustaining of a witness is incomplete if it fails to show that the witness gave material testimony against the defendant on trial. Hence if it be conceded that the State was sustaining the witness— and this is not conceded—the bill is insufficient in the respect mentioned. In any event, if the testimony was improper, we are of opinion that it could not have injured appellant.

Bills of exception 6 to 8, both inclusive, relate to the same subject matter and will be considered together. It is shown that prior to the time any testimony had been admitted with reference to appellant having ceased being pastor of the Government Hill Methodist Church, and while Mrs. W. C. Welch was testifying for appellant, she was asked on cross-examination by the district attorney when appellant ceased to be pastor of said Government Hill Methodist Church. Appellant objected on the ground, among others, that the answer of the witness would in effect substitute the opinion of parties other than the jury on the facts in evidence and that the testimony would be highly prejudicial. The witness answered that she thought his connection with said church ceased about December 1, 1933. Counsel for the State next asked the witness when she severed her connection with said church. She said that it was in April, 1934. It was in evidence, without objection on the part of appellant, that he left the Government Hill Methodist Church and organized the Christian Fellowship Church. W. C. Welch, a witness for appellant, testified, without objection, as follows: "I did not quit the Government Hill Church when he quit, but I quit quite a while afterwards, but I did quit that Government Hill Methodist Church when he started the new church or about that time, and, as I say, I am enrolled as one of the charter members or founders of the new church."

We quote from the testimony of Mrs. Welch as follows:

"I do not know when the Rev. Welburn ceased to be the minister or pastor of the Government Hill Methodist Church but I think it was along about the first of December of last year. I did not cease my connection with that church at that time and while I do not know the date that I did discontinue my connections with that church, I will say that it must have been along about April of this year and I am now a member of the Christian Fellowship Church. I cannot give you the date that church was organized but it must have been some-

where along in April of this year. I joined that church in April of this year but I cannot give you the exact date. I am one of the founders of that church, that is, charter members. I do not know whether my husband is one of the charter members of that church or not.

"My husband and I have contributed money to the defense funds in this case and I am sorry that we could not double it."

Manifestly, counsel for the State was seeking to show that Mrs. Welch, who had given material testimony on behalf of appellant, was biased. We quote from Branch's Annotated Texas Penal Code, Section 163, as follows: "The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. The adverse party may prove declarations of a witness which tend to show bias, interest, prejudice, or any other mental state or status which fairly construed might tend to affect his credibility. Mason v. State, 7 Texas App., 623. Sager v. State, 11 Texas App., 111. Bonnard v. State, 25 Texas App., 195; 7 S. W., 862. Bennett v. State, 28 Texas App., 540; 13 S. W., 1005. Reddick v. State, 47 S. W., 995. Sapp v. State, 77 S. W., 458. Green v. State, 53 Texas Crim. Rep., 473; 110 S. W., 925. Lowry v. State, 53 Texas Crim. Rep., 562; 110 S. W., 911. Green v. State, 54 Texas Crim. Rep., 7; 111 S. W., 933. Gelber v. State, 56 Texas Crim. Rep., 462; 120 S. W., 863. Streight v. State, 62 Texas Crim. Rep., 463; 138 S. W., 747. Renn v. State, 64 Texas Crim. Rep., 639; 143 S. W., 173. Pope v. State, 143 S. W., 612. O'Neal v. State, 146 S. W., 938. Whitehead v. State, 147 S. W., 585. Irvin v. State, 148 S. W., 591. Smith v. State, 148 S. W., 722. Weaver v. State, 150 S. W., 786. Kelly v. State, 151 S. W., 304. Cain v. State, 153 S. W., 153. Green v. State, 154 S. W., 1004. Curry v. State, 162 S. W., 859. Edwards v. State, 172 S. W., 233. Latham v. State, 172 S. W., 808."

In any event, substantially the same testimony was given by W. C. Welch, without objection on the part of appellant. Ordinarily the receipt of improper testimony will not bring about a reversal, when the same evidence is before the jury without objection. Upton v. State, 20 S. W. (2d) 794.

Bill of exception No. 9 presents the following occurrence: Mrs. J. F. Long, a witness for the State, testified on her direct-examination that Miss Wineta Long and appellant went into the county clerk's office at Boerne and signed a notice of intention to marry. On cross-examination by appellant's counsel the witness testified that she went to the door of the clerk's

office and observed appellant bent over, but did not know what he signed. She said: "I saw him signing, but as to whether or not he was writing on a table like this or bent over, I say I cannot describe that. Their backs were to me. It was something, however, that I saw defendant signing on and I know he was writing there. I cannot give you a definite answer to your question as to what position he was in on the day he was signing those declarations of intention to marry." It is certified in the bill that upon cross-examination the witness became less definite as to seeing appellant sign said instrument and finally testified that she did not in fact see him sign it. At this juncture, appellant's counsel asked her why she had answered that appellant bent over. She answered: "He certainly was." Counsel for the State then interrupted appellant's counsel, and addressed the court, as follows: "I am going to object to the argument with the witness. She has said she saw them bent over. She did not say she saw them take a pen in hand and write and sign anything. She said that about five times. She wont swear that they signed anything or did not sign anything, but that she saw them bent over. That is as far as she has testified and now his argument is going on about the signing and the lady says she will not say she saw them sign anything. Now it is getting into an argument." Appellant's counsel replied: "If Mr. Ladon thinks he is qualified as a witness let him be sworn and testify." Thereupon appellant's counsel asked the witness whether she saw appellant bent over and whether he was writing on a desk or table. At this juncture the court interrupted the proceedings with the following statement: "I do not recall that she testified that he was doing any writing on this particular occasion. She said he was stooped over and she assumed he was signing it, but she did not say he was writing on anything. I think most of this signing that has taken place is in your own mind." Appellant excepted to the remarks of the court on the ground that they constituted a comment on the weight of the evidence.

Appellant made no effort to further cross-examine the witness concerning the matter, and it does not appear that the court curtailed the examination. No effort was made to have the reporter read the testimony of the witness on the point in question. The court was not requested to instruct the jury to disregard the remarks of the court. There is nothing in the bill to show that said remarks referred to material testimony. Under the circumstances, it is doubtful whether said bill is sufficient. See Whittington v. State, 38 S. W. (2d) 814,

and Dolezal v. State, 191 S. W., 1158. Article 707, C. C. P., provides that the court shall not comment upon the weight of the testimony, or its bearing on the case, nor make any remarks calculated to convey to the jury his opinion of the case. Conceding that the remark was improper, it is observed that it is not every comment that requires a reversal of the judgment, but that before a reversal is warranted, it is essential that the probability of injury shall be disclosed by the record. Dolezal v. State, supra; Stayton v. State, 22 S. W., 38; Milo v. State, 127 S. W., 1025. We quote from McGee v. State, 40 S. W., 967, as follows: "The court should refrain from expressing any opinion in regard to the effect or weight of testimony, in passing upon its admission or rejection, and the statute prohibits such comments; but, under the unbroken line or decisions, in order to require a reversal under such circumstances the action of the court must be reasonably calculated to operate prejudicially to the accused."

The remark in question is susceptible of two constructions. In the first place, it might have impressed the jury with the view that the trial judge was of the opinion that appellant did not sign the notice of intention to marry. In the second place, it was susceptible of the construction that the court did not think the witness had testified that she saw appellant sign said notice.

If the construction first mentioned be adopted, we think it is clear that said comment gave support to appellant's theory that he had not signed a notice of intention to marry. Hence it would be in favor of appellant's contention and against the theory of the State. Under such construction no injury to appellant could have resulted therefrom. See Clay v. State, 51 S. W. (2d) 693.

If the second construction be adopted, we must look to the entire record in an effort to determine whether said remark was reasonably calculated to injure appellant. On her direct-examination, Mrs. Long testified to having gone to Boerne with appellant, Mrs. Welburn and her daughter on the occasion it was claimed the notice of intention to marry was executed. Again she testified to having been in Boerne with the same parties when appellant and Mrs. Welburn were united in marriage. As to the execution of the notice of intention to marry, she testified further on her direct-examination that appellant and Mrs. Welburn entered the county clerk's office and "filed intentions." On cross-examination, the witness first testified that she saw appellant sign said notice. Upon being

further vigorously cross-examined by counsel for appellant she testified as follows: "I guess I had better say that it is true I wont say I saw him sign anything and I wont say I didn't see him sign anything. They walked in and I started in with them where they file intentions and Wineta asked me to go out and I will say that I didn't see him sign the instrument on the 22nd but he certainly was bent over. I would rather say that on that first day I didn't see him sign anything. I did not see him get any blank paper. I was not looking."

The jury heard the questions propounded and the answers given. Under the circumstances, it might be plausibly argued that the remarks of the court could not have misled the jury as to the testimony given by said witness. Be that as it may, the jury had before them the testimony of two physicians that prior to the date of the alleged marriage appellant came to them with Mrs. Welburn, who was pregnant, and sought to have them perform an illegal operation on her. Moreover, the jury heard the testimony of Mrs. Welburn and her sister to the effect that notice of intention to marry was executed by appellant, and that the marriage occurred. They heard Judge Lehman testify that he performed the marriage ceremony and that in his best judgment appellant was one of the contracting parties. Specimens of appellant's handwriting, as well as the notice of intention to marry with appellant's name thereon, were before the jury. Appellant admitted the fact that he had been in Mrs. Welburn's company on several occasions. In the light of all these facts, we are of opinion that it is unreasonable to conclude that because Mrs. Long testified as hereinbefore shown the jury would have reached the conclusion, in the absence of the remark of the court, that the testimony given by the other witnesses for the State was false. In the light of the record, we are constrained to hold that the contradictions in her testimony could have had no appreciable effect on the verdict of the jury. It follows that we are of opinion that the remark of the court was not reasonably calculated to operate prejudicially to appellant.

It is shown in bill of exception No. 12 that in his argument counsel for the State used language as follows: "You have said that you believe in the enforcement of the law when you took your oaths here. Not only is he (referring to appellant) attempting to drag the name of a good woman through the mire, but he is attempting to stamp the stigma of bastard on the child."

The qualification appended to the bill reads as follows:

"The argument complained of was a proper, logical argument or deduction from the State's evidence introduced on the trial, particularly as to the name of the prosecuting witness and also as to the status of the child in view of the popular meaning of the term 'bastard' as distinguished from the legal definition thereof. The defendant denied paternity of the child and cast doubt on its paternity."

It is observed that the proof on the part of the State was to the effect that appellant was the father of the child of Mrs. Welburn; that after Mrs. Welburn became pregnant appellant sought to have an illegal operation performed on her in order that an abortion might be brought about; that thereafter appellant went to Boerne and married her; that when she instituted a suit for divorce against him he testified that he had never married her; that on the present trial he denied that he had ever had sexual relations with her and denied that he had ever married her; that he denied that he was the father of her child. Under the circumstances, it would appear that it was not improper for counsel for the State to draw the deduction that appellant was not only reflecting upon the name of Mrs. Welburn, but that he was also stigmatizing his child. It is well settled that counsel for either side have a right in the argument to draw reasonable deductions from the testimony adduced on the trial. Branch's annotated Texas Penal Code, sec. 370; Cooper v. State, 147 S. W., 275; Thomas alias Whitehead v. State, 28 S. W., 534; Reynolds v. State, 17 Texas App., 425; Hines v. State, 123 S. W., 412.

It appears from bill of exception No. 13 that appellant introduced a witness who qualified as an expert on handwriting and who testified that he had examined photostatic copies of the marriage certificate certifying that appellant had been united in marriage to Miss Wineta Long, the written notice of the intention to marry and also the physician's certificate which purportedly had been signed by appellant. He testified further that in his opinion said instruments had not been signed by appellant. It is certified in the bill of exception that there was no testimony that a Mr. Weaver was sick and that he was the only expert in Texas the State could have called to contradict appellant's witness; and further, that it was not in evidence that the State had no money with which to employ an expert. The bill recites that counsel for the State, in closing the argument, used language as follows: "Why or where would the State of Texas without five cents to their names; without one nickel with which to employ experts, can't employ

experts and bring them here to deny the testimony of Mr. Smith, well we would have employed the only one in State of Texas who is now very sick, Mr. Weaver, but we did not have one cent with which to employ one. I am going to leave this case to these other twelve experts sitting before me and let you judge for yourselves whether that was Welburn's signature or not."

Upon objection being made, the district attorney requested the jury not to consider his remarks, and the court instructed them not to consider said remarks of counsel as evidence in the case. The bill of exception is qualified as follows: "Mr. Simmons, of counsel for the defendant, in his argument before the jury, made before the argument complained of in this bill berated the State for not putting on any experts to contradict the testimony of the defense expert Mr. T. N. Smith, and the argument complained of in this bill was in answer to argument made by defense counsel."

It is the general rule that the accused is not entitled to complain of improper argument of State's counsel which is occasioned by and justified by the argument made on behalf of the accused. Gaskin v. State, 46 S. W. (2d) 975; Watson v. State, 237 S. W., 298. In Watson v. State, supra, the evidence showed that Charley Chambers, Watson and two others committed the offense. Chambers testified for the State. In argument counsel for Watson criticized the county attorney for permitting Chambers to turn State's evidence instead of Watson. The county attorney replied in argument that "he did not allow the witness Charley Chambers to turn State's evidence until after he tried to get the defendant Hunt Watson, to do so." This court held that the argument was invited. We quote from the opinion as follows:

"If appellant's attorney used the language attributed to him by the court in his qualification to the bill there can be no doubt that he was leaving with the jury the inference that Watson would have turned State's evidence if he had been permitted to do so by the county attorney. Judge Davidson, writing in Sinclair v. State, 35 Texas Crim. Rep., 132, 32 S. W., 531, says:

" 'When a defendant's counsel provokes improper remarks to be made by counsel for the State, the defendant will not be heard to complain of such remarks.'

"The following cases are cited in the Sinclair opinion, some of which directly support the foregoing announcement: Baker v. State, 4 Texas App., 223; Williams v. State, 24 Texas App.,

33, 5 S. W., 658; House v. State, 19 Texas App., 227; Mayes v. State, 33 Texas Crim. Rep., 33, 24 S. W., 421; Norris v. State, 32 Texas Crim. Rep., 172, 22 S. W., 592. We, therefore, conclude that no reversible error would have been presented, even had the court declined to charge the jury not to consider the county attorney's remarks, and surely no error of a serious character can be contemplated in view of the charge given."

We think the argument in the present case was invited, and conclude that under the authorities we have cited reversible error is not made to appear.

There are other bills of exception relating to the argument of counsel for the State which we do not deem necessary to discuss. We are of opinion that they fail to reflect reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant urges that we erred in our original opinion in the disposition made of bill of exception number nine. The bill relates to a remark made by the trial judge in ruling on a question that arose during the cross-examination of Mrs. J. F. Long, it being urged that said remark was a comment on the evidence which resulted injuriously to appellant. While the court should exercise the utmost caution to prevent such questions from arising, yet it is not every comment or remark made by the trial judge that demands a reversal. (Authorities are cited in our original opinion). As said by Judge Davidson in McGee v. State, 37 Texas Crim. Rep., 668, 40 S. W., 967—"Under the unbroken line of decisions, in order to require a reversal under such circumstances the action of the court must be reasonably calculated to operate prejudicially to the accused."

In determining this question, necessarily the whole record must be looked to. In further considering the matter it is well to get fixed in our minds what the situation was at the time the incident arose. As a circumstance tending to show guilt and tending to fix the identity of appellant as the man who had married Miss Long the State was claiming that appellant on a certain date had gone with Miss Long and the witness, Mrs.

·J. F. Long, to Boerne where appellant and Miss Long filed their declaration of intention to marry. Upon the point of signing and filing such declaration Mrs. Long testified as follows on direct examination. "He (appellant) and Wineta got out and ·they went into the County Clerk's office and filed intentions."

Nothing seemed to have been asked the witness on direct examination about seeing appellant sign the declaration. On cross-examination the entire testimony of the witness on the point is as follows: "As to whether or not I saw Mr. Welburn sign the declaration of intentions I will say that I stepped to the door and Wineta said, 'Mama, don't come in here,' and I stepped back and took my seat, but I saw him bent over. I do not know what they signed but they signed on some paper or something I suppose. I didn't stand there and listen. I told you that I walked away. I saw him sign it but as to whether or not he was writing on a table like this (indicating) or was bent over I will say I cannot describe that. I did not notice whether the man was standing on the inside of the cage and that there was a little thing that they signed in there. I was not feeling very well that day and did not notice. It seems to me that they were stooped over like this (indicating) and bent over. Their backs were to me. It was something high up that I saw them signing over. I knew he was writing there. I had a faint idea on one of these days of them signing some-thing. I cannot give you a definite answer to your question as to what position he was in on the day he was signing those declarations of intentions to marry. I do not mean to back up and say that I didn't see him sign it. It is not a matter of backing up. It is a matter that I have a picture in my mind of signing something and I can't tell whether it was that day or not. I cannot remember definitely. In answer to your question about the first trip up there whether I can tell this jury that I saw him sign that instrument up there or not I will say that I can't be definite and I told you I could not be and I cannot remember definitely as to whether I saw him sign a written instrument on the 25th. In attempting to give you my best recollection as to whether or not I saw him sign some-thing on the 22nd or did not see him sign anything on that date, I will say that I suppose I had better say that I did not see him, and I cannot say that he did sign anything. I know they walked in together. I guess I had better say that it is true I won't say I saw him sign anything and I won't say I didn't see him sign anything. They walked in and I started in with them where they file intentions and Wineta asked me to

go out and I will say that I didn't see him sign the instrument on the 22nd but he certainly was bent over. I would rather say that on that first day I didn't see him sign anything. I did not see him get any blank paper. I was not looking. I do not remember whether I saw him sign on the second day. I cannot remember."

The State was trying to show that appellant signed a declaration, and appellant was with equal zeal contending that he did not sign it. After some statements by counsel on both sides, the court experessed himself as shown in our original opinion. What other construction than the two there suggested could have been placed upon the court's remark by the jury does not occur to us. If the situation had been reversed, that is, if appellant had been contending that he did sign the "declaration of intention" and the State contending that he did not sign it, then the possible harmful character of the remark would be obvious. We have been unable after again considering the matter most carefully to see how the remark of the court could have possibly injured appellant.

The only other matters urged as grounds for rehearing are the arguments of counsel for the State. The bills bringing the complaints forward have been again examined, and we think none of them present such occurrences as justify a reversal: It is insisted that the qualification to bill of exception number thirteen does not show that counsel for appellant indulged in improper argument in criticizing the State for not using expert witnesses to combat the evidence of the expert used by appellant on the subject of handwriting, and therefore, counsel for the State could not be excused for the improper argument shown in bill of exception number thirteen. No statement was made by State's counsel as to what could have been proven by Mr. Weaver. If the argument of appellant's counsel was not improper, and if that of State's counsel in reply thereto went further than it should, still, we are unable to see how serious harm could follow.

Appellant's motion for rehearing is overruled.

*Overruled.*