KENNETH ENNOX V. THE STATE.

No. 18186. Delivered May 13, 1936.

The opinion states the case.

*C. D. Bourne, Jr.,* of Clarksville, and *R. E. Eubank,* of Paris, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for burglary, punishment being two years in the penitentiary.

The house burglarized was a barn belonging to Dick Jackson, in which he kept oats and other feed for stock used by him in connection with his sawmill business. On the night of December 13, 1934, the barn was broken into and seventy-five bushels of oats stolen. The oats were in sacks, five bushels to the sack. Evidence around the barn, and a trail of oats leading therefrom, indicated that the sacks of oats had been carried from the barn to a bridge some two hundred yards from the barn where they had been placed on the ground under the bridge. It was the theory of the State that appellant, Kenneth Covington, and one or two others had acted together in committing the offense; that the oats were hauled from the bridge in appellant's truck to a house which had formerly been occupied by Covington, but which was vacant at the time of the burglary. This vacant house was south some three hundred yards distant from the residence then occupied by Covington and his family. The oats were found in the vacant house the next day after the burglary and were identified by proof that the sacks were muddy, the mud being the same as that under the bridge, and further, by the unusual circumstance that Mr. Patton, who was working for Mr. Jackson, had tied some nails up in a rag and hidden the nails, together with a pair of pliers, in one of the sacks of oats. When the oats were recovered and returned to Jackson the things mentioned were found in one of the sacks. In attempting to connect appellant with the offense the State relied upon proof of tracks supposed to be those of appellant and also of tracks of a truck claimed to have belonged to him, and the presence of oats in the carrier box and seat of said truck, and in the pocket of a coat belonging to appellant. It is appellant's contention that the evidence falls short of meeting the requirements demanded by the law where circumstantial evidence is relied on.

There were three or four sets of human tracks leading from the barn down to the bridge heretofore mentioned. After testifying that he followed the trail of oats and tracks from the barn to the bridge, and to finding the imprints of sacks on the ground at that point, an officer gave the following rather remarkable piece of testimony:

"* * * I saw some foot prints there that I recognized, I thought. I recognized the foot prints. I thought they were Kenneth Ennox's foot prints. I was able to recognize them because

I just know his foot and I have just noticed it for the past ten years. I just know his track. * * *"

This testimony went into the record without objection. The only explanation ever made by the witness as to any peculiarity about the track appears in his cross-examination, as follows:

"* * * Just as soon as I observed these three sets of tracks I knew who one of them *were*. The peculiarity about it is in the shape of the shoe and the way he puts it down where he walks. It would be possible for someone else in the world to have a track like that, but I thought I was positive I knew whose track it was."

The officer further testified that no truck tracks which aroused his suspicion were found about the bridge, and that the first tracks of a truck of which he took particular notice were "around Kenneth Covington's where the truck had been turned around in an unusual place, and then went on over toward Manchester." Speaking of truck tracks near where Covington lived, said officer testified that:

"* * * they were the same tracks identically as the casings on Kenneth (Ennox's) truck. I had seen Kenneth's truck. The tires on his truck and those tracks there were the same as though made by his tires. * * * These tracks had turned off down into the Riggs pasture. Didn't anybody live there at that time, but Kenneth Covington had lived there. These tracks turned off on the turn-row there and went down to this house where Kenneth Covington had lived. There were no other truck tracks down that road. Those were the same tracks made by Kenneth's truck as I went on down to this house where Kenneth Covington had lived and found some sacks of oats down there. I went on back to Kenneth's house and inspected the truck closely and we found at that time oats in the back of the truck. The truck was there first at the store at Manchester."

When the sheriff again examined the truck after it had been taken from Manchester to appellant's house he found in the truck a coat which belonged to appellant, in the pocket of which were also found some oats. After appellant was put in jail the sheriff took Covington down to the bridge and measured and fit his shoe in one of the tracks at that point, and it fit in the track. On re-direct examination the officer testified that what enabled him to distinguish the tracks of appellant's truck from others with the same or similar tires was that one of the front tires of appellant's truck was old, thin and worn from use on hard-surface roads; that the rubber was worn off

of it; that it made an imprint on the ground very different from other tires. It is not claimed that the tracks of this truck were found anywhere about the bridge. No truck tracks were followed continuously from the bridge to the point near the vacant house where the oats were found. In fact, the only place where the truck tracks seem to have been observed closely was where they went into and came out from the vacant house, where the oats were found. The record leaves it somewhat of a mystery how the oats ever got away from the bridge| Testifying on cross-examination with reference to the tracks of the truck the officer said:

"* * * There were plenty of things peculiar about those tracks that I could identify them and connect them with Kenneth Ennox's car. The front left tire was worn out. There was no boot on the outside. It was worn like they wear on a hard surfaced road. I do not see very many tires like that. I don't remember exactly what kind of tires the other three were. As to what peculiar marks they had about them—just the tread is all. I have seen a tread like that before. As to whether it was a Firestone tire or not, I would not be positive, .but I have seen lots of them. We just saw where those tracks went in to where the oats were. We just saw where they turned around down there near a gap going into Will Covington's pasture."

It was the theory of the State that the stolen oats were hauled to the vacant house in the truck which belonged to appellant. The truck in question had no truck bed on it. It was the chassis of a truck only that had what is described by some witnesses as a "carrier box" on it, and described by the officer as follows:

"* * * The bed to the truck was a little old box bed, probably two by three or two by four. A five bushel sack of oats would be about three or three and a half feet long and about two feet wide. In other words, one sack of oats would just about cover the bottom of it."

Notwithstanding this specific description of the "carrier box" on appellant's truck, the officer testified that you could place sixteen five-bushel sacks of oats on the truck and carry them without difficulty. It does not appear from the evidence that the truck which is supposed to have carried the oats to the vacant house made more than one trip. Only one set of tracks about the house is mentioned in the record. It was the testimony of the constable who lived at Manchester that he saw Ennox about two o'clock on the afternoon before the

burglary that night, and that Covington was with him; that Ennox came to where witness was in his truck. The truck made a noise as if the muffler was off. This witness testified that about two-thirty that night a truck passed witness' house, awakening him; that the truck was going west and that he (witness) said to himself: "It is just Kenneth Ennox going home." Witness did not state that there was any peculiarity about the exhaust of the truck that caused him to express to himself such an opinion. Witness says that the truck that passed his house during the night had only one light. No witness testified that appellant's truck had only one light. Witness testified that he saw no one in the truck; that it went past his house in the direction of the vacant house where the oats were found and came back in about forty-five minutes, going toward Manchester. It will be observed that this witness' testimony is the expression of a mere opinion as to who was in the truck and carries no probative force whatever.

The presence of loose oats in the carrier box and on the seat of the truck and in the pocket of appellant's coat has little, if any, probative force. It seems to have been established beyond question by a witness who was in the mercantile business in Manchester, and who had been summoned by the State, but called by appellant as a witness, that he had frequently sold oats and other feed stuff to appellant; that his sales tickets showed that on December 5th and December 10th two sacks of oats were sold to appellant. Oats and other feed purchased by appellant were hauled in the truck which figures in this case. The witness did not remember how the oats were carried on the particular days mentioned, but said he had seen appellant haul them in the truck in question. Other witnesses for appellant testified to the same effect in regard to the hauling of oats by him in the "carrier box" of the truck, usually about two sacks at a time.

Appellant and Covington lived some three miles apart and appellant lived about five miles from the vacant house where the oats were found. The State was evidently relying to some extent on the circumstance that appellant and Covington were together in the neighborhood of the burglarized barn in the afternoon before the burglary that night. One of the State's witnesses, Mr. Harp, accounted for appellant's presence in a manner consistent with his innocence. The witness testified that appellant was at witness' house about three miles from the burglarized barn about sundown on the afternoon before the burglary; that about thirty days before appellant had

talked to witness about buying a male pig and came after it on the occasion mentioned, but the pigs were not up, and that appellant came back after it about eight o'clock the next morning. This statement bears out the testimony of an alibi witness for appellant who claims to have been at appellant's home the night of the burglary, and who says appellant was at home; that witness left about seven o'clock in the morning, leaving appellant there. Appellant stated to witness as he was leaving that he (appellant) was going after a hog.

It is apparent from the record that the State in attempting to identify appellant as one of the burglars relied entirely on tracks of a person, thought to be those of appellant, and tracks of a truck thought to have belonged to him. However positively the officer may have expressed the opinion that the tracks of the person were those of appellant, it is, after all, an opinion only. It occurs to us if the officer was as certain in that opinion as indicated by his evidence, he ought to have been able to give the jury and this court some more definite marks of identification than merely to say: "It is in the shape of the shoe and the way he puts it down where he walks," which really means nothing as a standard of comparison. The attempted identification of the truck tracks is equally unsatisfactory as found in the record. All worn automobile or truck casings bear a certain likeness one to the other. If the truck in question—after suspicion pointed toward it—had been driven to the vacant house where the oats were recovered, and its tracks placed alongside the tracks found there, then such comparison might have been available as to more nearly satisfy the law on circumstantial evidence; however, as we understand the record, the officer saw the truck tracks at the vacant house, then later saw appellant's truck five miles away, and by a mental comparison arrived at the opinion expressed in his testimony. Where the State has relied on circumstantial evidence to connect accused with a crime this court has always recognized the uncertainty of "tracks" alone as fixing the identity of accused. One of the latest expressions from the court is found in Powell v. State, 100 Texas Crim. Rep., 43, 271 S. W., 913, wherein we said:

"Where the State has relied largely upon the similarity of tracks found at the scene of a crime, and other tracks found later or made by appellant, or upon measurements of appellant's footwear and the tracks found at the scene,—for identification of the accused as the party connected with the crime, this court has required much strictness in testimony before

holding it sufficient to identify the accused as the guilty party."

See, also, Maxwell v. State, 109 Texas Crim. Rep., 533, 5 S. W. (2d) 991; Steed v. State, 101 Texas Crim. Rep., 525, 276 S. W., 281; Carlisle v. State, 107 Texas Crim. Rep., 408, 296 S. W., 889; Warren v. State, 52 Texas Crim. Rep., 218; Harrison v. State, 16 Texas Crim. App., 325. Other cases will be found annotated in Texas Jurisprudence, Vol. 18, under Sec. 331, page 454, and Branch's Ann. Texas P. C., Sec. 143, page 82. We are of opinion that appellant's contention that the evidence does not meet the requirement of the law where the State relies on circumstantial evidence must be sustained.

Appellant complains by bill of exception number three at the admission in evidence of the sheriff's testimony that, after having examined appellant's truck on the street in Manchester, he went to appellant's house and made a further examination of it, at which time appellant's coat was in the truck. He discovered some loose oats in the pocket of appellant's coat. The objection was based on the proposition that the sheriff had no search warrant at the time and that the search made of appellant's truck while it was at his house was in violation of the Constitution of the United States and of the State of Texas. It seems there was no objection to the search of the truck while it was on the streets of Manchester, and the only additional discovery made through the search at appellant's house was the finding of the loose oats in the pocket of appellant's coat. The sheriff testified that at the time he made this search appellant's wife was present and gave her permission for him to do so. It is appellant's position that under the circumstances the wife was not authorized to give such consent. He cites the case of Amos v. U. S., 255 U. S., 313, 65 L. Ed., 654, as being direct authority supporting his proposition. This court has had occasion heretofore in Cass v. State, 124 Texas Crim. Rep., 208, 61 S. W. (2d) 500, to discuss the Amos case (supra), and we do not understand it to hold as contended by appellant. The court is inclined to adhere to its former opinions on the subject. Cass v. State (supra); Pruitt v. State, 109 Texas Crim. Rep., 71, 2 S. W. (2d) 856; Alejandro v. State, 116 Texas Crim. Rep., 325, 31 S. W. (2d) 456.

It is not thought necessary to discuss bill of exception number two. It appears not to be meritorious.

For the insufficiency of the evidence the judgment is reversed and the cause remanded.

*Reversed and remanded.*