HAROLD LEE PALM V. THE STATE.

No. 23393. Delivered June 12, 1946.
Rehearing Denied June 28, 1946.

458

The opinion states the case.

*T. P. Henley* and *Guy Bonham*, both of San Antonio, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is rape. The punishment assessed is death.

Appellant brings forward eighteen complaints, each of which he contends presents reversible error.

His first contention is that the evidence is insufficient to justify and sustain his conviction. With this we cannot agree.

The State's evidence, briefly stated, shows that on the night

of the 9th day of October, 1945, the parents of the injured girl went to a party at the home of a friend and left their daughter and small son at home. During their absence and before the children had retired for the night, someone cut the screen on the window, entered the home, and with a pistol commanded the children to go through the window through which the uninvited visitor had entered. He then marched them out into a vacant lot grown up in weeds, where he tied the boy's hands and feet, and then assaulted the girl and had carnal knowledge of her by force and threats. The record shows that in the struggle with her assailant she obtained possession of his pistol and threw it in the weeds where it was later recovered by the officers. It was a .32 caliber double-action six-shooter. Immediately after the commission of the offense officers were summoned. They obtained from the assaulted party a description of her assailant. She described him as a negro man wearing dark clothes, a dark hat, a silver ring on his left hand and a short mustache. She also described his approximate height and weight. On the night in question a slow rain was falling, and the ground and weeds were wet. Appellant's wife was employed as a maid by the parents of the injured girl. The maid and her husband (the appellant) lived in an apartment over the garage which was located on the premises of the injured girl. While on the premises, the officers noticed appellant on the porch of the garage apartment, and he seemed to fit the description given to them by the prosecutrix. They went to his apartment and talked to him. They noticed his mustache and also the silver ring on his left hand, but he was not wearing any clothes which corresponded with the description given them by the injured girl. They asked the appellant's wife for permission to look the premises over which she readily gave. As a result of the search of the premises they found wet clothes of the description that had theretofore been given them by the prosecutrix. They found that his shoes had been washed and were still wet. His shirt had some bloodstains on it. This shirt was taken to a chemist in the State Department of Public Safety, who analyzed the same and found the blood to be type "O." The injured female's blood was also analyzed and found to be of that type. In the struggle the girl was struck in the face, her teeth were knocked back, her lips were cut, and she was also cut on the neck with a knife. She bled rather profusely.

Mr. Lacey, a fingerprint expert, took fingerprints from the window of which the screen had been cut and through which the intruder had entered the house. These fingerprints corresponded with those of appellant's fingers.

Abe Seigel, who is in the jewelry and loan business, testified that on the 27th day of September, 1945, appellant pawned a .32 caliber pistol with him for five dollars; that he gave appellant a pawn ticket which the witness identified; that on October 8, 1945, appellant redeemed the pistol and surrendered the pawn ticket. After appellant was arrested, the injured female identified him as her assailant. She also identified him at the trial.

Penetration of the female organ by the male organ of appellant was clearly proven.

Appellant did not testify or offer any affirmative defense.

It is our opinion that the evidence is ample to sustain the jury's conclusion of the appellant's guilt. We, therefore, overrule his contention.

Appellant in due time filed and presented a motion to quash the indictment on the ground that it did not contain an averment that the injured female was not then the wife of the accused. The court overruled the motion to which appellant excepted. Whenever an indictment charges rape by force, threats, or fraud, it is not necessary that it contain such an averment. However, when the alleged female is mentally diseased so as to have no will to oppose the act of carnal knowledge or when the injured female is under the age of eighteen years and consented to the act of intercourse, then it is necessary to charge that the female was not the wife of the accused. See Belcher v. State, 39 Tex. Cr. R. 121; Wells v. State, 128 Tex. Cr. R. 318; Caidenas v. State, 40 S. W. 980; and authorities cited. We, therefore, overrule his contention.

Bills of Exception Nos. 2 to 7, both inclusive, disclose that Merrel W. Smith, prospective juror No. 160; Thomas W. Phelps, prospective juror No. 163; C. M. Rhea, prospective juror No. 175; W. C. Rachie, prospective juror No. 181; Allan Sparger, prospective juror No. 207; and Walter Seydler, prospective juror No. 245; each testified on his voir dire examination that he was not summoned by any officer in person or by registered mail but by a card. The defendant objected to each of the jurors for the reason that he was not summoned in compliance with the statute. The court qualified each of the bills and in his qualification thereof states that each juror attended court in response to his notice; that defendant did not file any motion to quash the venire; that no juror objectionable to the defendant served

on the jury which tried him. The bills, as thus qualified by the court, were accepted by appellant and he is bound thereby. All of the special veniremen drawn for this case having appeared in court and no juror objectionable to him having been selected to serve as a member of the jury before whom he was tried, we fail to understand how or in what way any injury resulted to him as a result of the manner in which some of the jurors were summoned. Had the jurors failed or declined to appear in court at the stated time and the sheriff had been instructed to summon talesmen, then a different question would have been presented, as was the case in Kincheloe v. State, 146 Tex. Cr. R. 414, but here we have a different state of facts to deal with. In the instant case, any presumptive injury is rebutted by the court's qualification of the bills. We, therefore, overrule the same.

Bill of Exception No. 8 complaining of the action of the trial court in exempting officers who were witnesses in the case from the rule, is also qualified by the court, and as thus qualified, the bill fails to reflect error. The failure of the court to enforce the rule as to witnesses by permitting officers to testify for the State, was within the sound discretion of the court unless it is made to appear that he abused his discretion with respect thereto to the prejudice of the accused. See Brown v. State, 136 Tex. Cr. R. 567, 127 S. W. (2d) 295; Clark v. State, 210 S. W. 544, 85 Tex. Cr. R. 153; Shield v. State, 118 Tex. Cr. R. 509, 38 S. W. (2d) 76.

By Bill No. 9 appellant complains of the admission in evidence of the wearing apparel found in the garage apartment as a result of a search thereof without a search warrant. This bill is also qualified by the trial court, who states in his qualification that the search was incidental to the arrest. Besides, the State had shown that the officers had the permission of the defendant's wife to search the premises; that at the time the wife gave the officers permission to make the search, the defendant was in an automobile which was parked some distance from the premises. The bill, with the qualification of the court, was accepted by the appellant, and as thus qualified, it fails to reflect any error. In support of the opinion here expressed, we refer to the following authorities: Alejandro v. State, 116 Tex. Cr. R. 325; 31 S. W. (2d) 456; Cass v. State, 124 Tex. Cr. R. 208, 61 S. W. (2d) 500; Ellis v. State, 130 Tex. Cr. R. 220, 93 S. W. (2d) 438; Ennox v. State, 130 Tex. Cr. R. 328; 94 S. W. (2d) 473; Wheeless v. State, 150 S. W. (2d) 806, and cases there cited.

By Bill No. 10 appellant complains of the testimony given by D. S. Porter to the effect that the prosecutrix gave him a description of the party who had outraged her, repeating the description given by her, to which defendant objected on the ground that the same was improper and prejudicial. The court admitted it on the theory that it showed the identity of defendant which led to his arrest, and was a part of the res gestae. There is nothing in the bill which negatives that it was res gestae. This bill appears to us to be without merit, and it is overruled.

By Bill of Exception No. 11 he complains of the testimony given by D. S. Porter, a police officer, to the effect that he heard Mr. Christoph, a deputy sheriff, ask Willie Palm, wife of the defendant, if it would be all right to search her premises, to which she replied, "Yes." Appellant objected to the question on the ground that he was not present; that it was hearsay, incompetent and prejudicial. This bill is also qualified by the court who states in his qualification thereof that this testimony was admitted for the sole purpose of determining the validity of the search and was limited to that purpose; that the defendant was not present but was some distance away at the time; that Mrs. Housman had theretofore testified that the servant's quarteres were a part of her premises and were occupied by Willie Palm incident to her employment; that she did not rent the same to the defendant, nor did she have any transaction whatsoever with him concerning the same. We see no error reflected by the bill. The witness heard Christoph ask Willie Palm for permission to make a search of the premises, and her reply thereto was within the knowledge of the witness, he being present and having heard what was said by the parties relative to the search. Moreover, Mr. Christoph testified to the same facts. It is the settled rule in this State that where evidence of like character as that objected to is admitted without any objection, it will not constitute such an error as will require a reversal of the case. See Wilson v. State, 145 S. W. (2d) 598; Weaver v. State, 165 S. W. (2d) 106; Williams v. State, 182 S. W. (2d) 715, and cases cited.

By Bill of Exception No. 13 appellant complains of the introduction in evidence of the necktie and belt with which the assaulting party tied the feet and hands of the brother of the prosecutrix on the night in question. We see no merit in this bill. The transaction was a part of the assault on both parties at the same time and was in preparation of the commission of the rape of the prosecutrix.

By Bill Nos. 14 and 15, he complains of the testimony given by Mr. Christoph, a deputy sheriff, who identified the wearing apparel found in the garage apartment on the night in question, as well as the condition thereof when the same was found. Appellant objected to said testimony and the introduction in evidence of the articles found by the officer, on the ground that the search was made without a search warrant. Since the officer had the permission of appellant's wife to search her premises, the search was not illegal, and any evidence discovered as a result of the search became admissible. The question here presented comes within the rule announced by this court in the case of Ellis v. State, 93 S. W. (2d) 438. See also Cass v. State, 124 Tex. Cr. R. 208; Wheeless v. State, 150 S. W. (2d) 806.

By Bills Nos. 16 and 17 appellant complains of certain remarks by the District Attorney in his argument to the jury. By Bill No. 16, he claims that the District Attorney, in his closing argument to the jury, said:

"Matt Kimes, the Oklahoma bandit, escaped, 'Cowboy' Henry got out, and George Fisher is walking the streets; and if you don't give this negro the death penalty, he may escape like these other criminals."

Appellant objected to the argument on the ground that it was improper, inflammatory and prejudicial. The court promptly sustained the objection and instructed the jury to disregard it. This bill is qualified by the court who states in his qualification that the remarks were provoked and invited by appellant's counsel who, in his closing argument to the jury, said in substance:

"That the members of the jury, if they wrote a death penalty in this case, would be in the same position as the executioner, who pushed the switch of the electric chair at the penitentiary; that the death of the defendant, under such circumstances, would be much more merciful to him than a life sentence in the penitentiary; that if the jury wrote a verdict, assessing a life sentence, it would mean that the defendant would be condemned to serve for the rest of his natural life; that he would be required to work and sweat and labor with his hands, and that when the iron doors of the penitentiary clanged in his face every evening for the balance of his life that only his death would bring a merciful release from his punishment. Counsel for the defendant assured the jury that if a life term were assessed the defendant would never be out of prison."

We are of the opinion that under the circumstances disclosed by the bill and its qualification by the court, no reversible error is reflected therein.

By Bill of Exception No. 17 appellant claims that the District Attorney made the following remarks in his argument to the jury:

"We selected many of you jurors because you are the fathers of young 16-year-old daughters in order that you may inflict the proper punishment by experience and see that justice is meted out."

Appellant objected to this argument. The court promptly sustained the objection and instructed the jury to disregard the same. Appellant contends that notwithstanding the court's action the remark was so inflammatory that it deprived him of a fair trial. The court qualified this bill and in his qualification states that the District Attorney did not make the argument set out in the bill, but what he did say was this: "In selecting a jury in this case, the State sought to secure substantial men of this community." At this point, counsel for defendant interrupted the prosecuting attorney, whereupon the court instructed the jury not to consider the remarks as any evidence for any purpose; that the attorneys for either side were not witnesses, but that the jurors should bring in a verdict in accordance with the evidence and the charge of the court; that thereafter, the District Attorney proceeded with his remark substantially as follows:

"Now, gentlemen of the jury, if you believe and feel that the State has discharged the burden of proving to you the guilt of this defendant beyond any reasonable doubt by the introduction, calmly and dispassionately, of evidence, which has proven to you that this defendant is guilty beyond a reasonable doubt, then we submit to you, as twelve substantial citizens of Bexar County, you should go out and write a verdict of guilty and assess the defendant's punishment at death."

In each instance the court instructed the jury to disregard the remarks of the District Attorney. This court has said many times that improper argument by the prosecuting attorney is ordinarily cured by an instruction from the court to the jury to disregard it, unless it is violative of some mandatory provision of the statute, or when it is obviously hurtful and prejudicial. In the present instance, we do not regard the argument of such prejudicial nature that it could not be cured by

the court's instruction to disregard the same. See Vineyard v. State, 96 Tex. Cr. R. 401; Gray v. State, 127 Tex. Cr. R. 439; Thompson v. State, 116 Tex. Cr. R. 437; Jackson v. State, 116 Tex. Cr. R. 263; Ebers v. State, 129 Tex. Cr. 287; and many others may be cited in support of the doctrine stated.

We have examined the entire record and discussed the various bills of exception reserved by the able counsel representing appellant, but fail to find any error that would require a reversal of the judgment of conviction. Therefore, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again complains of many matters already decided by us in our original opinion, and seems to lay great stress upon a statement made by the trial court in its qualification of some of his bills wherein it is said that the subject matter of the bill was not mentioned nor urged in the motion for a new trial herein. We think such a statement by the court was but a preliminary to the qualification and not intended to mean that because of such omission, same should not be considered by the appellate court. We consider all bills properly prepared, approved and filed, and do not limit our consideration to matters found in the motion for a new trial. In Acosta v. State, 72 S. W. (2d) 1074, it was held that although a motion for a new trial was sworn to, it did not prove the truth of matters set up therein, but was only a pleading.

It is shown conclusively that after appellant's arrest he was taken from the premises and placed in a police car in the custody of two officers some distance from the garage apartment where appellant's wife lived. It was also shown that the officers then asked appellant's wife for permission to search such apartment, and she gave such permission. Again we think her answer to such request was admissible, and not only proven by one officer but also by another officer who heard such conversation.

Upon such search, consented to by the wife, were found certain articles, such as a white handled knife, like one described

by the little girl as being used by appellant in threatening and cutting her, a cigarette lighter similar to one used by appellant in her presence, as well as bloody clothes and muddy shoes.

If the arrest was illegal, to which the writer does not agree, there was nothing revealed from the incidental search of appellant save his stubby mustache and the ring on his finger. The presence of the mustache upon his face at the time of the arrest and its absence at the time of the trial was testified to by witnesses without objection at the time of the trial, and Deputy Sheriff Maldonado testified that the silver ring shown him at the trial had been taken by him and Deputy Sheriff Carnal off appellant's finger, and this ring was offered in evidence as exhibit No. 21. We have searched the record again and find no objection to the introduction of this ring, said to have been taken from appellant's hand and introduced as exhibit No. 21. Therefore all that was obtained by virtue of this arrest of appellant was that he had a stubby mustache and a silver ring on his left hand. Both of these propositions entered the record from other sources without objection, and we see no error reflected herein because of the arrest of appellant under the circumstances herein portrayed.

Relative to the complained of remarks of the district attorney, we think these bills were propertly disposed of in the original opinion and need no further discussion.

This case evidences effective and intelligent efforts upon the part of the officers, and as presented leaves no room for reasonable doubt that the proper person who committed this offense was brought to trial.

Appellant's attorneys, both appointed by the court, deserve commendation for their diligent efforts in his behalf. After a careful review of this cause, and appellant's contentions in his motion, we are still convinced of the correctness of the views expressed in our original opinion.

The motion for a rehearing will therefore be overruled.