L. T. WATSON V. THE STATE.

No. 23455. Delivered November 20, 1946.
Rehearing Denied December 18, 1946.

644

The opinion states the case.

*Scarborough, Yates & Scarborough,* of Abilene, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an aggravated assault and by the jury assessed a penalty of one year in the county jail, and he. appeals.

This case has been before us heretofore (148 Tex Crim. Rep. 589, 189 S. W. (2d) 1020), upon a conviction for murder without malice, and was by this court reversed and remanded upon the ground of insufficient evidence to support such a charge.

When the present case was called for trial, the District Attorney filed a motion in writing, requesting the trial court to dismiss from the indictment the allegation and element of "murder with malice aforethough in order that this cause could be tried without the necessity of a special venire," such dismissal in no way to affect the indictment with reference to murder without malice, which motion was by the trial court granted over the objection and exception of appellant. We see no error in thus allowing the State's Attorney to indicate to the court and appellant that he did not intend to try appellant for a capital offense. It is further worthy of notice that in his charge to the jury the court only submitted aggravated assault and simple assault, not submitting thereto murder without malice. We are of the opinion that the State's Attorney was within his rights when he obtained the consent of the court to waive the capital offense portion of the indictment and retain the charge of murder without malice, which also included aggravated as well as simple assault.

It is noted that the indictment herein consists of two counts, the first charging murder with malice aforethought, and the second embodying an act done by mistake, as shown in Article 42, P. C. In the first count appellant was not only charged with murder, but also under Articles 694 and 695, C. C. P., such mur-

der allegations included all the lesser degrees of culpable homicide, even down to a simple assault. See Miller v. State, 112 Tex. Cr. R. 125, 13 S. W. (2d) 865. Surely the opinion in the former appeal of this case in which it was held that the facts there presented did not evidence an unlawful killing without malice, did not preclude the State from again trying appellant for the same offense, and an endeavor to produce more testimony. We have never held that an opinion reversing a cause for insufficient evidence foreclosed the State from attempting to offer additional evidence upon a subsequent trial or to convict for a lesser degree of charged culpatility. Failing in the probative force, perhaps, of desired additional evidence, the State could still legally convict for proven lesser degrees of an unlawful assault, such being the proposition with which we find ourselves confronted in this cause.

Bill of Exceptions No. 5 complains because the appellant's attorneys, anticipating the fact that the District Attorney would attempt to elicit from the witness, Mel Walker, testimony to the effect that the deceased was an awkward and clumsy type of man, they, therefore, requested the trial court to instruct such attorney not to ask such question. This the court refused to do, and appellant brings forward an objection to the trial court's refusal. Possibly the bill may show that the question was asked, but it does not show that any answer was given to such question, if asked. We are not impressed with the seriousness of such error, if any, especially since the bill evidences the fact that the trial court instructed the jury not to consider such question for any purpose.

Bill of Exception No. 6 relates to the action of the trial court in refusing to place Deputy Sheriff Miller (who was a State's witness) under the rule with the other witnesses. It is shown from the bill that he was the only deputy available to assist the shereiff in waiting on the court, and it was thought necessary by the Court to keep him in the court room to attend to his duties of waiting upon the court, calling witnesses, etc. This was a matter within the discretion of the court, and no abuse thereof is shown here. See Williams v. State, 194 S. W. (2d) 771; Palm v. State, 195 S. W. (2d) 354.

Bill of Exceptions No. 7 complains because of the fact that when Deputy Sheriff Miller, who found the deceased lying on the sidewalk immediately after the difficulty which soon resulted in deceased's death, was asked the question:

"With reference to D. F. Sanders' (deceased's) physical con-

dition at the time you found him here on the sidewalk, and his physical condition as you took him into the house down here, state whether or not you observed it to be stronger or weaker, if you did observe it?"

To which question he answered, "It was weaker." This question and answer thereto were objected to because the witness was not an expert and not a doctor, and the question called for a conclusion, and was prejudicial and inflammatory, which objection was overruled. It appears from the qualification of this bill that the witness also testified that the deceased, "couldn't step—he just wobbled around first one way and then the other," and that the witness practically carried him into the home of the deceased after keeping him in the court house a short while. The witness Miller, on this occasion, saw the deceased lying on the sidewalk and appellant standing by the side of deceased. Miller asked appellant what had happened and he said "I knocked him down, that is what," and Miller asked appellant to help pick deceased up, but appellant did not do so. Witness then brought the Sanders boy on up to the court house, also the appellant. In about 10 or 15 minutes deceased commenced getting sick, and Miller bathed his face. In about 30 minutes he again got sick and wanted to go home. He was then taken home by Miller, who had to carry him in and to his bed. After this testimony was had, the portion objected to took place. We think that the matter testified to was so obvious that any person who had observed the deceased's actions from the time he was struck until he became helpless could have been allowed to say whether his condition was "stronger or weaker," or the same, during the progress of the effects of this injury which soon resulted in his death sometime during the night of the day he was injured. Undoubtedly, he was injured in this altercation and grew steadily weaker as the hemorrhage progressed and soon died. We see no error in admitting this testimony of Mr. Miller.

Bill No. 8 is concerned with the fact that Mr. Miller, a deputy sheriff, was placed by the sheriff in charge of the jury, waited on them, and guarded them during the progress of this trial over appellant's objection. The trial court qualifies this bill with the statement that Miller was the only deputy available for the purpose of waiting on the court, calling the witnesses and looking after the jury. and that he "observed nothing in the conduct of Mr. Miller, nor was any specific conduct called to the attention of the court, that indicated that he was prejudiced against the defendant." We are cited to his testimony and confess that he appeared to be a fair witness, who favored neither party hereto.

Bill No. 9 complains because of the trial court's action in allowing Dr. R. H. Cochran, a physician, to testify as follows:

"Based on the condition in which he was at the time you first saw him and the condition in which he remained until the time of his death, state what, in your opinion, caused his death?"

This was objected to mainly on the grounds that the cause of Sanders' death was a matter for the jury to determine and that there was no sufficient predicate shown upon which the doctor could base an expert opinion. The witness then answered, "It would be the hemorrhage of the brain." He was the physician who was called to wait upon the deceased. He saw him from 3:00 or 4:00 P. M. until Sanders died. He gave his symptoms, the bruises, and evidence thereof on the body; and was surely qualified as an expert to give his opinion of the cause of Sanders' death. See Clayton v. State, 138 S. W. (2d) 1084, 139 Tex. Cr. R. 86.

Again, this same witness was allowed to testify, over objection, that from his experience and observations as a physician and surgeon, the facts testified to by the doctor as having been found on deceased's body often resulted from a blow about the head or face. The testimony was uncontroverted that appellant struck the deceased and that the deceased was knocked or slung down; that his mouth was cut and his brain suffered a hemorrhage. We think the witness was qualified to say what could have caused the hemorrhage and death.

The uncontroverted testimony herein shows that appellant was talking to deceased relative to his paying for the damage to appellant's pick-up resulting from a collision with deceased's car, and during such talk appellant took off his coat and laid it over on a nearby car prior to striking deceased, evidently preparing himself for an expected and early difficulty. At the time this case went to trial, appellant requested the trial court to instruct the District Attorney not to ask the appellant's character witnesses anything relative to their having heard of any rows or difficulties which appellant might have entered into prior thereto. The trial court refused such instruction. The question complained of in Bill No. 11 was asked R. L. Stewart, a character witness for appellant, as follows:

"He (appellant) has the reputation there as being quite a fighter, doesn't he?"

To which the witness answered, "He never heard of it." We

think the witness could be questioned as to what appellant's reputation was, although specific actions of misconduct could not be inquired into. See Prater v. State, 104 Tex. Cr. R. 669, 284 S. W. 965; Ford v. State, 171 S. W. (2d) 885; Shipley v. State, 131 Tex. Cr. R. 527, 100 S. W. (2d) 704; Goss v. State, 104 Tex. Cr. R. 456, 284 S. W. 578; also Wharton's Cr. Law, (10th Ed.) Vol. 1, p. 239. Again, unless there was some reasonable ground to expect a favorable answer, such qualities of reputation should not be made the subject of cross-examination and should be admitted, if shown, only as matters of hearsay and not as specific instances.

We see no error shown in the matters mentioned in Bills Nos. 12 and 13.

Bill No. 14 shows that the question objected to was never answered, and we think it evidences no error.

Bill No. 15 is based upon a request to the court in writing not to submit a charge to the jury on aggravated assault, which request the court properly refused. Unquestionably, the State's testimony shows an assault and battery upon the deceased, and under Paragraph 7 of Art. 1147, P. C., an assault and battery becomes aggravated, "When a serious bodily injury is inflicted upon the person assaulted." We are unable to see how a more serious bodily injury than death could be inflicted upon one. An aggravated assault may be committed with the fist where the assault is made with premeditated design and serious bodily injury results. See Thompson v. State, 144 Tex. Cr. R. 321, 162 S. W. (2d) 728.

In Bill No. 16 we think the testimony is sufficient upon which the jury could conclude that the deceased died as a result of a blow, or blows, inflicted upon him by appellant, and the trial court was correct in charging upon an aggravated assault.

Bill No. 17 is overruled. The careful trial judge only charged the jury on the offenses of an aggravated assault and a simple assault, failing to charge upon murder without malice; and the jury's verdict of an aggravated assault, we think, finds support in the evidence as well as the law.

We find no error shown herein, and therefore the judgment is affirmed.

#### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The very eloquent and forceful motion for rehearing in this

case emphasizes two reasons for which it is contended a rehearing should be granted and the judgment of the trial court reversed. The first relates to the bill of exception complaining of the action of the trial court in refusing to disqualify the Deputy Sheriff from waiting on his court, because he was a witness in the case. A complete answer to the argument thus presented is that the Court of Criminal Appeals is a court of law and not of equity. The argument given is calculated to appeal to the legislature, in behalf of some legislation on the subject, but this court cannot make the law which the legislature has thus far declined to pass. It is not within our province to supersede the discretionary power of the trial judge, so long as his actions in exercising the same are within his jurisdiction.

The second question considered in the motion relates to the questions of the district attorney concerning specific acts of misconduct on the part of the defendant. This has been fully and fairly treated in the original opinion. Our review of the record has served to convince us that the right conclusion has been reached, and we think the motion for rehearing must be overruled, which is accordingly done.