JIM OAKLEY V. STATE.

No. 24131. October 27, 1948.

362

Hon. Luther Gribble, Judge Presiding.

*E. T. Miller* and *Simpson, Clayton & Fullingim,* all of Amarillo, for appellant.

*Hamilton and Deaver,* (Special Prosecutors) of Memphis, *Leonard King,* District Attorney, of Childress, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of cattle. The punishment assessed is confinement in the state penitentiary for a term of six years.

Appellant contends that the evidence is insufficient to sustain his conviction. The record reflects that Charles C. Allen at the time of the commission of the alleged offense lived with his parents on the Browder Ranch which was adjacent to the I. C. Little, Sr. Ranch, of which Bob Goff was in charge. The fence between the two ranches was in a bad condition and at times cattle would wander from the Little Ranch into the Browder Ranch. On the 28th day of March, 1947, Charles C. Allen saw appellant in the town of Memphis at which time they agreed to steal some of the Little cattle which had gotten into the Browder pasture. Appellant procured a saddle, a saw, and some canvas and ducking sacks and then they proceeded to the Browder Ranch in appellant's automobile. Upon their arrival at the ranch, appellant drove the car up to the barn while Allen went into the house and got a .22 caliber rifle. They then caught two horses and put the saddle which appellant had brought from Memphis on one horse and Allen put his father's saddle on the other. Appellant drove his car a distance of about seven or eight miles from the barn into the pasture near a creek, while Allen rode one horse and led the other. When they got to the creek, Allen saw two cows belonging to I. C. Little, Sr. He drove them near the car where he shot one and killed it; they dressed it and then Allen shot the other animal which was also dressed on the spot where it was killed.

They used a saw in cutting off the lower part of the legs, and in doing so the bone on one leg was split leaving a small sliver on the shank. They took the beef to the car on the horses and placed it in the rear part of the car, covering it with canvas and some ducking sacks. They then went to appellant's home where they spent the night and the next day they took the beef to

Borger where appellant sold it to one O. E. Chaney who owned a meat market. After they had disposed of the meat and had started on their trip home they were arrested at Clarendon, carried back to Borger, and placed in jail. Charles C. Allen told the officers where they had killed the cattle and obtained the meat. He accompanied the officers to the place where the animals were slaughtered and dressed. The officers found two fresh hides with the brand "I. C." on each. They also found human tracks, one of which was made by a person wearing shoes and the other by a person wearing boots. At the home of appellant they saw a saddle with blood on it; and they asked appellant's former wife for permission to take the saddle which she readily gave. The officers, upon examination of the meat at Chaney's market, found a sliver on one of the shanks. They cut the shank off, took it to where the animals were dressed and fitted it to one of the legs and it fitted perfectly.

Appellant did not testify or offer any affirmative defense. At the close of the evidence, he made a motion for a peremptory instruction to the jury to acquit him. He based his motion on several grounds, first, that the evidence was insufficient to justify his conviction because the accomplice was not corroborated. We cannot agree with this contention for the following reasons: (a) He was found in possession of the carcasses of recently stolen cattle. (b) There was blood on his saddle which corroborated Allen that appellant carried some of the meat from the stolen cattle on horseback to the automobile. (c) There was evidence that two persons participated in the theft of the cattle, all of which corroborated Allen, the accomplice.

His next contention is that there is a variance between the allegations in the indictment and the proof, in this, that it was charged in the indictment that Bob Goff was the special owner of the cattle in question, whereas the uncontroverted evidence shows that the cattle were in the Browder Ranch and, therefore, not under the control of Bob Goff as charged. We see no merit in his contention. There is no question that the cattle belonged to I. C. Little, Sr., but the care, custody, control, and management thereof was in Bob Goff notwithstanding they had wandered into the Browder pasture. It appears to be well settled that the wanderings of animals do not affect their possession, since they cannot stray from the possession of one person into the possession of another and thus change their ownership. See 2 Tex. Jur., page 869, sec. 120. See also Taylor v. State, 75 S. W. 35; Denton v. State, 69 S. W. 142; and De Ford v. State, 160 S. W. (2d) 251.

Appellant next claims that since I. C. Little, Sr., was the actual owner of the cattle, it was encumbent on the state to prove his want of consent to the taking of the cattle, and having failed to do so, he was entitled to an instruction to the jury to acquit him. He cites us to the case of Winn v. State, 135 S. W. (2d) 118, as sustaining his contention. In that case it was charged in the indictment that Joe C. Trammel was the owner of the sheep and in possession thereof at the time of the theft, but the proof was that his father, J. A. Trammel, had the care, custody, control, and the management thereof. This, of course, constituted a variance between the allegations and proof. In the instant case we have a different state of facts. Here it was charged that Bob Goff was the owner and had the actual care, control, management, and possession of the cattle in question and the proof corresponds with the allegations. If the appellant had the consent of I. C. Little, Sr., the actual owner, the duty rested upon him to show it since it was a defensive matter. The authorities cited by appellant under his propositions have no application here.

Appellant addressed a number of objections to the court's charge. He claims that the court erred in not instructing the jury on the law of circumstantial evidence since the state relied for a conviction, at least in part, upon circumstantial evidence. It is well settled in this state that unless the state's case depends entirely upon circumstantial evidence there is not any need for an instruction on the subject. See Martinez v. State, 61 Tex. Cr. R. 29; Rios v. State, 48 S. W. 505; and Wampler v. State, 28 Tex. App. 352. In the instant case the state made a complete case against appellant by the testimony of the accomplice, and his testimony was sufficiently corroborated by circumstances.

His next complaint relates to the court's action in declining to instruct the jury that the defendant was not required to testify in his own behalf and they should not consider for any purpose his failure to do so. In the case of Pounds v. State, 150 S. W. (2d) 798, this court held that such a charge was not required to be given, citing Branch's Penal Code, page 211, Sec. 377, where many authorities are cited.

Appellant also objected to the court's charge wherein the court charged that if the jury believed from the evidence, beyond a reasonable doubt, that Bob Goff had possession of the cattle in question, and that thereafter without his knowledge they strayed from the I. C. Little, Sr. Ranch onto the Browder Ranch, then the said Bob Goff had possession of said cattle at

the time they were taken. The court, in paragraph 5 of his charge, gave a correct definition of "possession," and in compliance with the mandatory provision of the law, made an application of the law to the facts of the case.

Bills of Exception Nos. 3 and 4 are in question and answer form without any certificate by the trial court that it was necessary that they be in such form for better understanding by this court of the matters therein complained of. This court has many times held that a bill of exception in question and answer form without a certificate by the court that it was necessary that the same be in such form could not be considered. See Vernon's Ann. C. C. P., Art. 667, page 506, Note 24, where many authorities are cited. See also Oliver v. State, 124 Tex. Cr. R. 48.

By Bill of Exception No. 5 he complains because the state inquired of Charles C. Allen, the accomplice, about what time of the day they left Borger to return to their home and whether or not they stopped anywhere, to which the witness replied they left Borger late in the afternoon; that they stopped in Panhandle and got some whiskey. The court sustained the objection and instructed the jury not to consider for any purpose the testimony of the witness that they stopped at Panhandle and got some whiskey. We think the court's prompt action as reflected by the bill fails to show any reversible error.

By Bill of Exception No. 6 he complains of the following question propounded by the district attorney to Charles C. Allen, the accomplice, to-wit: "I will ask you this, had it been more or less common out there for cattle to stray over into the Browder pasture with the I. C. Brand on them?" to which appellant objected on the ground that it was irrelevant and immaterial and did not prove any of the material allegations in the indictment. The objection being overruled, the appellant duly excepted. We perceive no error in the court's ruling.

By Bill of Exception No. 7 he complains of the following question propounded by the district attorney to Charles C. Allen, the accomplice, to-wit: "Do you know to whom those cattle belonged?" to which question he objected for various reasons therein stated, but the court overruled the same. Thereupon the witness stated that he knew of his own knowledge that the cattle belonged to I. C. Little, Sr. On cross examination he stated that the reason he knew the cattle belonged to I. C. Little, Sr., was because they carried the I. C. brand. We think the objection went more to the weight of the testimony than to its inadmissibility.

Bill of Exception No. 8 reflects the following occurrence: After the witness O. M. Perkins had testified that he lived at Borger; that on or about the 29th day of March, he had a conversation with appellant in a cafe at Borger; that appellant asked him for a loan of Five Dollars which was granted; that appellant asked him if he could sell some beef for him; that he told him no, but any butcher shop in town would be a good prospect. That thereupon, the district attorney asked the witness the following question: "When you told him you weren't going to try to sell any beef for him, did you not also tell him that you didn't want him around your place of business?" to which question appellant objected on the ground that it was leading and suggestive; that it was prejudicial to his rights. The court sustained the objection and the witness did not answer the same. We think that in view of the fact that the bill fails to show what answer the witness would have made it fails to show error. Moreover, the objection was by the court sustained.

Bills of Exception Nos. 9, 10, and 11 complain of some of the testimony given by Bob Goff, the foreman of the I. C. Little Ranch. We have examined these bills and have reached the conclusion that they, nor either of them, present reversible error.

Bill of Exception No. 12 complains of certain testimony given by Mr. Hill, Sheriff of Hall County, to the effect that they found the heads, hides, and intestines of some cows which were heavy with calves; that in another week or so they would have been born. We see no error reflected by the bill, and therefore overrule same.

By Bill of Exception No. 13 he complains of the testimony given by Mr. Hill, Sheriff of Hall County, to the effect that he went to the home of appellant, knocked on the door and appellant's former wife invited him into the house and there in plain view he saw a saddle with blood on it; that he asked her for permission to take the saddle which she readily gave. Appellant objected to this testimony on the ground that the sheriff did not have a search warrant to search the home and carry the saddle away. It is quite obvious that the officer was invited into the house by the woman in charge of the same and while in there he saw a saddle with blood on it. There is not any evidence that he made any search whatsoever. The saddle was therein and in plain view, and it was permissible for him to state what he saw.

Bill of Exception No. 14 reflects the following: After Guy Wright, Sheriff of Donley County, had testified that he saw

appellant and Charles C. Allen pass through Clarendon enroute to Memphis, he was asked, "Did you on that occasion arrest the defendant?" To which question appellant objected on the ground that it called for an opinion upon a mixed question of law and fact. The objection was overruled and he excepted. Thereupon, the witness was asked why he stopped the defendant and arrested him, to which he replied that he had been informed by Allen Jefferies, Cattle Inspector, that appellant and his companion had sold the carcasses of two cattle so cheap that they figured the animals had been stolen. When he approached their automobile, he saw blood on the running board, whereupon he opened the door and saw blood on the floorboards and back seat, and some bloody cloth on the back seat as well as some whiskey; that he did not have any warrant of arrest or a search warrant. The court sustained the objection as to the finding of the whiskey and excluded it. The court, however, admitted the rest of the evidence on the ground that there was probable cause for the search, to which appellant excepted. When the articles with blood on them were produced before the witness for identification, appellant again objected on the same ground heretofore stated, and in addition thereto he objected on the ground that there was no evidence that appellant and the accomplice were fleeing, seeking to escape arrest for any crime, nor was there any evidence that the offense was committed within the view of the arresting officer.

If it be conceded that the arrest of appellant and the search of his automobile were illegal, it still would not require a reversal of this case since the testimony of the Sheriff of Donley County is, in substance, to the effect that appellant had recently transported fresh meat in his automobile. This was not even a disputed fact, it was proved by Charles C. Allen, the accomplice, It was proved by Tipton to whom he showed the meat which he had in his automobile, and it was proved by Mr. Chaney to whom he sold the meat. The sheriff's testimony, as we understand the record, is but cumulative of the testimony of the three witnesses herein named. Just why the admission of the sheriff's testimony, even though it may have been erroneously admitted, should call for a reversal of this case under the facts here present, we are unable to understand. If it was error, it was harmless error.

On the question of an illegal search of his car, appellant cites us to the case of Butler v. State, 208 S. W. (2d) 89, as sustaining his contention. We do not agree with him. The facts in that case are quite different from those in the instant case.

In that case, the appellant was in his home. The officers, without a search warrant, invaded the same and made a search thereof in violation of the law. Such is not the case here.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

Opinion approved by the Court.