**Joseph Felice BURGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42218.**

Court of Criminal Appeals of Texas.

July 9, 1969.

Emmett Colvin, Jr., Dallas, court appointed on appeal only, for appellant.

Henry Wade, Dist. Atty., Malcolm Dade, Camille Elliott and James P. Finstrom, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is burglary of a private residence at night with intent to commit rape; the punishment, assessed by the court after a verdict of guilty, 99 years.

The appellant was convicted on May 3, 1966, and his punishment assessed. For some unexplained reason sentence was not pronounced until February 8, 1968. Present counsel on appeal was appointed in July, 1968. This record reached this court on May 19, 1969, more than 3 years after trial and more than 4 years after the alleged offense.

The record reflects that on April 2, 1965, Lewana Kay Neff Boleman [1] lived at the Richelieu Apartments on Mixon Avenue in the City of Dallas. She testified that she retired around midnight and was awakened about 4:30 or 5 a. m. by a man in bed on top of her with a gun at her neck who stated, "If you don't want to get hurt, just lower the (bed) covers"; that she immediately screamed but the man choked off her scream and threatened her; that in the course of her struggle she was able to "bite him and spit out a piece of the sweater he was wearing," but was beaten about the head and body; that at one point the man apparently put down the gun and approached with a green sash as if to choke her and that kicking free of the bed covers and her assailant she jumped up only to be struck by the gun on her head, shoulders and wrist; that her continued screams and struggles apparently caused the man to unlatch the front door and run out; that she immediately locked the door and called her fiance, Sam Boleman, who lived two blocks away; that when her fiance and his roommate arrived the police were called and she was taken to a hospital where stitches were taken in her head and a cast placed on her wrist.

The prosecutrix related that she did not give the appellant or anyone else permission to break and enter her apartment; that the blinds and curtains in her bedroom were closed when she retired.

She further identified the appellant as her assailant.

Sam Boleman testified that after his arrival at the prosecutrix's apartment he found her bleeding from the head, found blood splattered around the apartment, and determined that the point of entry was a bedroom window which was open with the curtains pulled back. He also discovered a piece of a sweater and a green sash which were turned over to the police.

Between 6 and 7 a. m. Henry Allen, the apartment building porter, arrived for work and soon thereafter found a pistol in a large trash container near the apartment house and summoned investigating officers whom he had earlier observed.

Officer Weldon Robbins identified State's Exhibit No. 5 as the pistol that he recovered after Allen had called his attention thereto. He related that the pistol had blood and hair on it. A chain of custody was established and a chemist testified that substance scraped from the pistol was human blood and the hair taken therefrom

---

1. The record reflects that the prosecutrix married Sam Boleman approximately 3 weeks after the alleged offense.

was "alike in all observable characteristics" with a sample of the prosecutrix's hair.

Other State's evidence shows that appellant was employed and living in Dallas at the time of the alleged offense.

Dallas Police Officer Moore testified that on May 13, 1965, he went to Tulsa, Oklahoma, where with Tulsa officers and the consent of appellant's wife he searched appellant's home and found a sweater with a hole or piece missing therefrom.

A lab technician testified he had determined by microscopic examination, rib count, yarn count and composition of yarn that the piece of cloth found in the prosecutrix's apartment fitted the hole in and matched the sweater found in appellant's home.

Appellant did not testify or offer any evidence in his behalf.

We shall consider appellant's second ground of error first.

Appellant contends the court erred in admitting into evidence an exhibit taken as a result of an illegal search and seizure in violation of the 14th Amendment, United States Constitution and laws of the State of Oklahoma.

This contention is based upon the fact that while appellant was in the Tulsa Okla-

homa jail officers conducted a warrantless search of his house in that city in his absence with the consent of his wife. As a result of such search the sweater with a patch missing was found and introduced in evidence as described earlier.

■ Appellant recognizes that it is well established in this State that a wife may consent to the search of her husband's premises where the consent is given without coercion.[2] Cass v. State, 124 Tex.Cr. R. 208, 61 S.W.2d 500; May v. State, 129 Tex.Cr.R. 2, 83 S.W.2d 338; Ellis v. State, 130 Tex.Cr.R. 220, 93 S.W.2d 438; Ennox v. State, 130 Tex.Cr.R. 328, 94 S.W.2d 473; Wheeless v. State, 142 Tex.Cr.R. 68, 150 S.W.2d 806; Palm v. State, 149 Tex. Cr.R. 456, 195 S.W.2d 354; Ware v. State, 151 Tex.Cr.R. 228, 207 S.W.2d 868; Oakley v. State, 152 Tex.Cr.R. 361, 214 S.W.2d 298; Brown v. State, 155 Tex.Cr.R. 347, 235 S.W.2d 142; Padilla v. State, 160 Tex. Cr.R. 618, 273 S.W.2d 889; Joslin v. State, 165 Tex.Cr.R. 161, 305 S.W.2d 351; cf. Bannister v. State, 112 Tex.Cr.R. 158, 15 S.W.2d 629; 11 Tex. Digest Criminal Law, ☞394–394.6(5); 34 Tex. Digest Searches and Seizures ☞7(27); 31 A.L. R.2d 1078. And we do not understand appellant to contend that the consent of the wife in the case at bar was impliedly coerced. Cf. Arnold v. State, 110 Tex.Cr. R. 529, 7 S.W.2d 1083, 9 S.W.2d 333; Jor-

2. Two distinct lines of reasoning underlie the decisions which uphold the implied authority of one spouse to consent to a search of the property of the other. The most common view is referred to as the joint control rationale where the emphasis is on the parties' relationship to the property. The other view is known as the agency or the authorization rationale where the relationship between the parties is emphasized.

The most common formulation of the joint control rationale is that "where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either." See United States v. Sferas, 210 F.2d 69, 74 (7th Cir. 1954); United States v. Goodman, 190 F.Supp. 847, 850 (N.D. Ill.1961); People v. Perroni, 14 Ill.2d

581, 590, 153 N.E.2d 578. The fact that Texas is a community property state was material in the adoption of the joint control rationale by this court. See Cass v. State, supra; 51 Cornell Law Quarterly 795, 797, 798.

The formulation of the authorization or agency rationale is that the relationship between the parties is such as to give rise to actual or apparent authority in the third party to consent. California courts, for instance, hold that the close relationship of husband and wife or parent and child gives rise to at least apparent authority to consent to a search. In re Lessard, 62 Cal.2d 497, 504–505, 42 Cal. Rptr. 583, 587–588, 399 P.2d 39, 43–45; People v. Ingle, 53 Cal.2d 407, 2 Cal. Rptr. 14, 348 P.2d 577; People v. Carter, 48 Cal.2d 737, 312 P.2d 665.

dan v. State, 111 Tex.Cr.R. 83, 11 S.W.2d 323; Garcia v. State, 138 Tex.Cr.R. 180, 135 S.W.2d 107.

Appellant relies upon Simmons v. State, 94 Okl.Cr. 18, 229 P.2d 615, in which it was held that a husband and wife have an individual personal right to demand that a search warrant be executed before their premises could be searched and this right may be asserted by either of them individually and separately; and that this right may not be waived by either the husband or the wife in the absence of the other.

■ We recognize that there is split of authority in this country as to the implied authority of one spouse to consent to a search of the property of the other. 47 Amer.Jur., Sec. 72, p. 548.

We conclude, however, assuming the timeliness and sufficiency of the objection,[3] that in such instances the law of the forum (Texas in this case) governs as to procedure and rules of evidence. 31 C.J.S. Evidence § 5, p. 821; 15A C.J.S. Conflict of Laws § 9(b), p. 424; § 22(1), § 22(9); 16 Amer.Jur.2d, Conflict of Laws, Sec. 76, p. 120. Any other view would lead to endless perplexity.

We reach such conclusion despite the fact that appellant vigorously urges the issue is not one of conflicts of law where the law of the forum governs as to a rule of evidence but is one of constitutional law.

It is appellant's contention that the Texas viewpoint of allowing the wife to consent is constitutionally suspect in light of the decisions of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, and Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154, emphasizing that a right of privacy of the individual —and not property alone—is sought to be protected by the Fourth Amendment. Appellant apparently advances the theory that until the Fourth Amendment was made applicable to the states, the only protection afforded an individual against unreasonable searches and seizures by state officers was state constitutional provisions; that the notion of consent by one in joint control of premises could circumvent those state constitutional provisions developed as a part of state decisional law.

The Supreme Court has never ruled upon this exact question. In Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, the court expressly avoided deciding whether a wife's consent could waive the rights of her husband. The decision for the accused there turned on the court's inference from the circumstances of the search that the wife's consent had been coerced. Since that time the court has had occasion to refuse to grant certiorari in such a case. See Maxwell v. Stephens, 348 F.2d 325 (8th Cir. 1965), cert. den. 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1966); Burge v. United States, 342 F.2d 408 (9th Cir.), cert. den. 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965).

■ We are not inclined, in the light of the record before us and authorities cited, to overturn the long established Texas viewpoint.

Ground of error #2 is overruled.

In his first ground of error appellant urges that the court erred, during jury argument, by directly commenting upon the weight of the evidence in violation of Article 38.05, V.A.C.C.P.

Harold Horne, who also lived at the Richelieu Apartments, identified the aforementioned State's Exhibit No. 5 (which was never introduced into evidence) as

3. The State in its brief urges that the appellant's objection was insufficient since he failed to furnish the trial court with sufficient information as to the pertinent Oklahoma law so as to comply with Rule 184a, Texas Rules of Civil Procedure. See Article 38.02, Vernon's Ann.C.C.P. (as to applicability of the civil procedural rules to criminal trials). See also Hamm v. Berrey, Tex.Civ.App., 419 S.W.2d 401.

his pistol. He testified that he kept it in a bedside table in his apartment and he had not given anyone permission to borrow or use the pistol on April 2, 1965, and that on such date he was "on the road" as a travelling salesman.

Jack Alper, Horne's roommate, testified he did not give anyone permission to use Horne's pistol. When asked if he noticed anything unusual about their apartment on the morning of April 2, 1965, he stated he observed "muddy tracks around the window and half way across the living room." The court then sustained appellant's objection to the question and answer and instructed the jury to disregard the same.

Appellant's complaint is predicated on the following which occurred during the State's closing argument:

"And before we go any further, I want to say that this is in evidence and you may take it back into the jury room with you.

"MR. BARCLAY: We object to him commenting about an exhibit that is not in evidence in this case.

"MR. ZIMMERMANN: It is in evidence. It was offered and received.

"THE COURT: I believe counselor, that the record will show that it *was* offered. It is the one that was stolen from the other apartment.

"MR. BARCLAY: We object to the comment of the Court and ask that the jury be instructed to not consider it for any purpose.

"THE COURT: All right, counselor, Ladies and Gentlemen, don't consider any remark of the Court for any purpose.

"MR. BARCLAY: We feel that the remark was prejudicial and inflammatory and we move for a mistrial.

"THE COURT: The Court will overrule your Motion for mistrial.

"MR. BARCLAY: Note our exception.

"THE COURT: All right, let's move along."

The remark of the judge appears to have been made inadvertently and not "calculated to convey to the jury his opinion of the case." See Article 38.05, supra; Piland v. State, 162 Tex.Cr.R. 362, 285 S.W. 2d 230.

We cannot conclude, in light of all the evidence, that the remark of the court resulted in such injury to the appellant or benefit to the State as to call for reversal under Article 38.05, supra. Garcia v. State, Tex.Cr.App., 427 S.W.2d 897; Byrd v. State, Tex.Cr.App., 421 S.W.2d 915; Howard v. State, Tex.Cr.App., 420 S.W.2d 706 and cases there cited. This is particularly true in view of the court's prompt instruction to the jury to disregard. Hearn v. State, Tex.Cr.App., 411 S.W.2d 543. To call for reversal the court's remarks must be material to the case and be reasonably calculated to operate prejudicially to the accused. Howard v. State, supra; Welburn v. State, 129 Tex.Cr.R. 323, 87 S.W.2d 259; Reyna v. State, 133 Tex.Cr.R. 13, 106 S.W.2d 696.

Ground of error #1 is overruled.

We have carefully examined the record and find no merit in the claim that the State persisted in attempting to prove the details of a burglary in a neighboring apartment in which a gun was taken, despite adverse rulings by the court. Ground of error #3 is overruled.

In ground of error #4 appellant contends that he has been denied a record on appeal and the effective right of appeal in violation of his rights under the 14th Amendment to the Constitution of the United States. He cites and relies upon Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed. 2d 811. We cannot agree. Appellant was

represented by appointed counsel at his trial who remained in the case until the present able and capable appellate counsel was appointed. We are not confronted with either an Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 or an Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, question.

While it is true that neither the opening jury argument of State's counsel nor the argument of appellant's counsel is included in the record, there is no showing that a request by either party was made to take such argument. Article 40.09, Sec. 4, V.A. C.C.P. Further, there is no claim that the same was taken and transcribed and there has been a refusal to include such arguments in the record on appeal.

Ground of error #4 is overruled.

The judgment is affirmed.

MORRISON, J., concurs in the result.