JOHN I. CALDWELL V. THE STATE.

No. 23770. Delivered November 5, 1947.
Rehearing Denied January 7, 1948.

*Edward Dwyer* and *Joe Burkett,* both of San Antonio, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of murder and sentenced to fifteen years in the penitentiary, from which he appeals.

The record contains several bills of exception but we find no brief or argument on file in the case and are, therefore, not impressed with the importance of the complaints to the extent that appellant would have us be.

A summary of the evidence would indicate that appellant is a "crap shooting negro" who was sometimes engaged as a bell boy at a hotel, but admits that his general occupation is gambling. The deceased is pictured as a soldier, or former soldier, who had come to San Antonio and was very active in the affairs of his race in and about the drinking and eating place of the section of the city where the killing took place. He was viewed by many witnesses as a violent and dangerous character. A long series of conflicts between appellant and deceased are detailed, few of which have little, if any, bearing on the particular circumstances of the murder for which appellant was found guilty. Concisely stated, the evidence is undisputed that appellant walked into the Cavalcade Bar, at 511 East Commerce Street in the City of San Antonio, and shot Thomas Barrett, widely known in that vicinity as King Kong. The State's witnesses, in considerable numbers, say that the

appellant came into the place from the rear and approached King Kong, shooting him in the back of the head with a pistol and again twice after he fell to the floor.

Appellant's version of the occurrence was not sufficiently different to require discussion in this opinion, as we are directed to consider the case by the bills of exception. He admits the shooting, including the two shots on the floor. He said it was because King Kong was jumping around and that he feared he might get his gun and shoot appellant. The latter two shots were to make sure of killing his victim.

The court's charge was quite liberal in presenting issues raised by the evidence and appeared to be satisfactory to appellant. The issues, as we view the record, are found in the bills of exception, the first three of which complain of the failure of the court to permit him to prove that the deceased had made some general threats to kill certain peace officers. We see no connection between the matters which were excluded and the offense for which appellant stands charged.

Appellant's reputation was put in issue as well as that of the deceased. While appellant was testifying in his own behalf, he was asked and required to answer that he had on a previous occasion testified that his occupation was that of shooting craps, and that he gambled at the Avalon Grill every day; that he gave this as his "profession" to make his living. The objection to this was that "* * * it is immaterial as to his occupation, and that such method is not the proper one to prove general reputation." It is noted that at this particular time his reputation had not been put in issue, and apparently that was not the purpose of the State in asking the questions, but that it was on cross-examination and was contradictory of statements which he had made in his behalf on direct examination.

Bill of Exception No. 6 complains of the refusal of the court to permit Lionel Flake, a witness in behalf of defendant, to testify as to the details of altercations had with deceased. The bill does not indicate whether the witness would have so testified, nor what the testimony would have been. Consequently we are unable to see grounds for error under this bill.

Bill of Exception No. 7 brings forward an objection to the question asked Carl Grundy, a character witness for appellant, as to whether or not the witness had ever heard of defendant being arrested. The answer was: "Well, no more than a crap

game." To clarify the matter the court asked the witness if he meant his reputation was that he was a crap-shooter. The bill does not show what the answer was to the court's query. The objection is that the question was about specific acts. As we view the answer, he is not asked about specific acts of misconduct but only as to whether or not the witness had heard about them. As presented the bill shows no error.

Bill of Exception No. 8 complains of the failure of the court to give the defendant's special requested charge as follows:

"If you believe from the evidence that the defendant knew, or had reasonable grounds to believe, that the deceased was armed and that he (defendant) might receive serious bodily injury or death at the hands of the deceased, then that the defendant would have the right to arm himself and seek out the deceased for the purpose of asking an explanation from the deceased as to the reason the deceased had taken defendant's money."

The evidence given by appellant himself says he armed himself and sought the deceased for the purpose of making him pay money that he claimed the deceased had taken from his pocket. He does not testify that he armed himself for the purpose of getting an explanation. He details how he had approached deceased for the purpose of demanding his money, prior to the killing, and says he became afraid to do it until he armed himself with the pistol. There is no evidence that he asked him for his money or for an explanation when he entered the place. According to his own testimony, no words were spoken by either appellant or deceased as, or after, he entered the room.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant has filed a motion for rehearing in which he seriously contends that we erred in the original disposition of this case. We have again viewed the record in the light of his motion and are convinced that all of his bills of exceptions were properly disposed of.

He vigorously asserts that we failed to discuss and dispose

of the question of race discrimination in the selection of grand and petit jurors; that he was a negro of African descent but that no negro was selected by the jury commission as a grand juror who returned the indictment against him in this case. It is true that no mention was made thereof in the original opinion. The main reason for failure to discuss it was that the question of race discrimination was raised for the first time in his motion for a new trial. We were of the opinion that he had waived the same.

Art. 358 C. C. P. relating to challenging the grand jury provides as follows:

"Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge."

He failed to avail himself of this method of challenging the grand jury, nor did he raise the question by a motion to quash the indictment. He had the opportunity to do so but preferred to take a chance on a trial and, in case of a conviction, raise it by a motion for a new trial. If this court should hold that the question could be raised for the first time on a motion for a new trial, then a defendant could go to trial without raising the question, take a chance of an acquittal, and in the event of conviction raise the question in a motion for a new trial, and thus obtain two trials. He cites us to the case of Eddie (Buster) Patton v. The State of Mississippi, 68 S. Ct. 184) decided by the Supreme Court of the United States on December 8, 1947, as sustaining his contention. It will be noted that in that case appellant raised the question in due time by a motion to quash the indictment. Therein lies the distinction between that case and the case at bar. It must be remembered that under the law of this State a person may waive anything except a trial before a jury in capital cases. It occurs to us that in the instant case appellant waived the right accorded him under the 14th Amendment of the Federal Constitution.

From what we have said it follows that the motion for rehearing should be overruled and it is so ordered.

Opinion approved by the Court.