## T. B. WILLIAMS V. STATE.

No. 25721. March 12, 1952.
Rehearing Denied April 23, 1952.

Hon. E. A. Bills, Judge Presiding.

*Lee Nowlin* and *W. D. Hollars,* Plainview, and *Burks & McNeil,* by *Burton S. Burks,* Lubbock (of counsel for appeal only), for appellant.

*Joe Sharp,* District Attorney, Plainview, *Dennis Zimmerman,* County Attorney, Swisher County, Tulia, *John L. Cox,* County Attorney, Hale County, Plainview, and *George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The appeal is from conviction for murder, with a life sentence in the penitentiary.

The homicide took place in Hale County. An indictment was returned by the grand jury of that county charging murder with malice and the case was duly transferred to Swisher County for trial.

The statement of facts in this case consists of 425 pages, in question and answer form. A sufficient summary of all this mass of testimony could be made in a short statement, but it is not considered necessary by the court, nor were the appellant's attorneys or state's attorneys impressed with the necessity for including in their briefs the greater portion of the things that went into the record. It is sufficient to say that the deceased and the accused were neighbors and had been for a great many years. It is indicated that trouble had arisen between the members of their families and appellant accused the wife of deceased of making false statements concerning members of his family, the details of which were not given. This was followed by conversations between appellant and the wife of deceased and led to the trouble which finally resulted in the tragedy. There was also some misunderstanding over an indebtedness. During a period of time prior to the killing, appellant says that the deceased had repeatedly threatened to kill him; that he had come to his premises making such threats but had left without attempting to carry them out. Members of appellant's family testified to some of them.

The two men met at a store as deceased was coming out of the door with his arms full of groceries. Appellant had his hand in his pocket to get some money for an article he intended to buy. Appellant says that the deceased gritted his teeth and made a threatening gesture toward him, whereupon he pulled his pistol and shot him.

The threats testified to by appellant and the members of his family were not denied by anyone and were made under such conditions that no one would be in position to contradict the statements made by the defendant in his own behalf.

Appellant states his complaints, based on his bills of exception, under four classifications: First, the refusal of the court to sign his Bill of Exception No. 10. Second, error in Paragraph 12 of the court's charge. Third, the refusal of the court to permit appellant to testify as to the reputation of deceased as a violent and dangerous man. And, fourth, remarks made by the court that he wanted the record to show that in selecting the jury the appellant used ten challenges and had five left.

The first complaint dies of its own weight. Exception had been taken to a paragraph of the court's charge in due order and this is found in the record. He then presented a bill of exception complaining of the failure of the court to sustain his exceptions to the charge. The court refused this bill saying that it is unnecessary. We think the court had a right to do that and the matter raised by the bill, if permitted, would be the same as that which is squarely before this court under the exceptions to the court's charge. There is no error shown in this complaint.

The fourth complaint is, as presented, trivial. We can conceive of no injury to appellant by reason of the fact that the court stated in the presence of the jury that he had exercised only ten challenges in selecting the jury, whereas he is permitted by law to have fifteen. It is a far-fetched conclusion to say that this was an indication that the court expected a jury verdict of guilty and that there would be a record on appeal. The record of the trial is made regardless of the results of the jury's verdict and it is perfectly proper that all of the facts be shown.

We then consider the second complaint based on exceptions to the court's charge as embodied in Paragraph 12. This paragraph, in the language of the court, is as follows: "Now, if you find and believe from the evidence before you that Cecil Lebow

had made threats to take the life of defendant or to do him bodily injury, and you further believe from the evidence that at the time of the shooting the said Cecil Lebow had then and there done some act or was doing some act, or if it reasonably appeared to defendant at the time, viewed from his standpoint, that Cecil Lebow had then and there done or was doing some act, which manifested an intention on the part of Cecil Lebow to carry out the threats so made, if any, and that acting under apprehension of death or serious bodily injury to himself, the defendant shot and killed Cecil Lebow, or if you have a reasonable doubt thereof, you will acquit defendant."

The exception lodged against this charge is as follows: "Defendant objects and excepts to paragraph twelve of the Court's Charge in that the same is too restrictive on the law of threats and does not properly state the law of threats, and further that nowhere in the charge as a whole does the Court apply the law of threats as viewed from the standpoint of the defendant at the time of the homicide."

It occurs to us that the statement of the exception lodged to the charge is a complete answer to the argument made in appellant's brief. We consider the charge proper. In the exercise of unusual caution the court repeatedly stated in general and specific terms that the evidence and all of the evidence relating to the killing should be considered as it reasonably appeared to the appellant at the time of the homicide. We can think of nothing necessary to be added to correctly state the law. If his repeated statements should be criticized as being on the weight of the evidence, Appellant has no complaint because it gave due, and probably undue, emphasis to the defensive testimony.

The third complaint listed in appellant's brief is based on the ruling of the court sustaining the state's objection to a question asked appellant, as found on page 152 of the statement of facts. After his attorney had asked him why he did the shooting and, by several questions, developed his reason for thinking his life was in danger, he then asked: "You knew his reputation, did you not, as being a violent and dangerous . . ." This assumed that deceased had such a reputation. The objection lodged against this was: "Now, we just object to that as not being a proper question. The court sustained this objection. The court's reason was based on the state of the record in that there was no proof at that time that deceased was a violent and dangerous man. He started with this reply to appellant's counsel: "If this witness can testify to that . . ."

As we understand it the court's ruling was that this witness, before he could testify that he knew deceased's reputation, should have been asked whether or not he had such a reputation. However, the bill is incomplete and cannot be appraised by us because it is nowhere shown that he had a bad reputation and the answer which appellant would have given is not embraced in the bill. For all we know he might have said he did not know it. It would be a foolish holding of this court to say that this case should be reversed and go back for another trial on the uncertainty as to whether or not the witness would have given an answer helpful to himself. To make such a bill complete it should be definitely shown that the answer had some value to the accused.

In holding a similar bill to be defective because it did not show what the answer would be, Judge Graves said in Martin v. State, 151 Tex. Cr. R. 207, 206 S.W. 2d 254, that the question has become practically elementary. The frequency with which we have held this seems to sustain Judge Graves' view. Among the many recent cases, see Caldwell v. State, 151 Tex. Cr. R. 247, 206 S.W. 2d 1013; King v. State, 151 Tex. Cr. R. 410, 208 S.W. 2d 376; Salazar v. State, 150 Tex. Cr. R. 84, 198 S.W. 2d 574; Cloud v. State, 150 Tex. Cr. R. 458, 202 S.W. 2d 846; and Oakley v. State, 152 Tex. Cr. R. 361, 214 S.W. 2d 298.

We have examined the record fully and have considered many other questions which have been treated by the briefs and supplemental briefs filed by the state's attorney and by the district and county attorneys. We have found no reversible error in them and it appears that appellant agrees with this finding as they have treated none of them except those which we have already discussed.

No reversible error appearing in the record the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant's counsel, in his usual forceful and penetrating manner, has again challenged the correctness of that portion of our original opinion wherein we discussed his objection to paragraph 12 of the court's charge. Both the paragraph and the objection were set forth therein.

Appellant now contends that, in holding as we did, we over-ruled a number of our previous holdings cited by Mr. Branch in the first paragraph of his Section 2085. We disclaim such an intention. We felt that the facts of this case brought it within the rule stated in the second paragraph of the above section, to-wit: "If no issue is made as to the making of the threats, a charge is not reversibly erroneous because the jury are therein instructed to find that the threats of deceased were in fact made."

We have re-examined the record in order to determine if the state controverted the issue that threats were made. If we find that it did, then the charge would be erroneous, because, as given, it required the jury to find that the threats were in fact made; while they should, in such a case, have been required to find that the accused *believed* that the threats were made.

We hold, at the outset, that evidence of the character of the deceased offered by the state under the authority of Article 1258, P. C., does not controvert the issue that threats were made.

In connection with the testimony of Mrs. Lebow, the wife of the deceased, it will be noted that she was asked by the state the following question:

"Q. Did he ever say he intended to harm (the appellant) in any way in the world? A. No sir, he did not."

The only meaning we could logically give this answer was that the deceased had never *in the presence of his wife* threatened the accused.

The actual threats to kill testified to by the accused were not made in the presence of the wife but were made directly by deceased to accused.

The telephone conversation testified to by appellant was substantially the same as testified to by the wife. The only variance lies in the fact that appellant stated that, several days following the conversation, the deceased had told him that, following the telephone conversation, he (the deceased) had come looking for the appellant, while deceased's wife testified that her husband had not left the house on that occasion. This conflict made a controverted issue as to whether appellant left the house on a certain occasion, but did not controvert the issue of what deceased may have said several days later as to his intentions to kill appellant.

We are hesitant to say that an issue may be controverted by inference alone.

The above does not bring the case within the rule which applies when there is a clear and unequivocal denial by state's witnesses that the threats relied upon by appellant had been made.

We do not feel that the state controverted the issue as to threats made by the manner of its cross-examination.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.